**Bill G. FAGAN, Plaintiff-Appellee,**

v.

**BANKERS MULTIPLE LINE INSURANCE COMPANY, Defendant-Appellant.**

**No. 81–2004.**

United States Court of Appeals, Fifth Circuit.

March 5, 1982.

Rehearing Denied April 9, 1982.

---

Potter, Guinn, Minton, Roberts & Ireland, H. Kelly Ireland, Harlan P. Abright, Tyler, Tex., for defendant-appellant.

Wellborn, Houston, Bailey & Perry, Rex Houston, Blake Bailey, Henderson, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, RUBIN and TATE, Circuit Judges.

TATE, Circuit Judge:

In this Texas diversity case, the insurer ("Bankers") under a group policy issued to an employer ("Johnson"), appeals from the award to Fagan of benefits for total disability. Fagan as an eligible spouse of an employee, had applied for and been issued a certificate affording him special risk coverage for certain specified losses arising out of accidental injury. We affirm, finding (a) that the district court correctly held that the exclusion clause relied upon by Bankers (found in the master policy in Wisconsin, but not in the certificate issued to Fagan in Texas) was not applicable, and (b) that the district court's factual finding that the insured gave timely notice of the claim was not clearly erroneous.

In 1965, Bankers issued to Johnson, employer of Fagan's wife, a group insurance policy. By it, the spouses of employees were afforded the privilege, upon application, of securing special risk group insurance protection against losses caused by accident. In 1968, an endorsement was added to the master policy in Wisconsin that, for spouses, added an additional exclusion against coverage of losses caused by an accident that was compensable under a state worker's compensation law.

In 1971 the plaintiff Fagan was issued a certificate in the principal sum of $50,000 under the special risk group policy. The certificate specified that certain coverage was provided while the master policy was in effect, upon Fagan's payment of a monthly premium. Payment for certain specified losses arising out of accidental bodily injury was provided,[1] including for permanent and

---

1. The "Schedule of Benefits" provides:

When injury to the Insured Person results in any of the following losses within One

total disability.[2] As issued to Fagan, the exclusions specified by the certificate did *not* exclude losses resulting from an accident compensable under a worker's compensation law.[3] The factual showing supports the district court's finding that neither Fagan nor his wife had knowledge of the worker's compensation exclusion until long after the accident had occurred from which this claim arises.

In 1975, Fagan was injured at work for his own employer. Ultimately, it was determined that he was entitled to a worker's compensation award for total and permanent disability. It is not substantially disputed that he also is entitled to permanent disability recovery under the Bankers policy and certificate, as awarded by the district court, unless (as the defendant Bankers contends) (1) the worker's compensation exclusion in the master policy in Wisconsin applies, despite its absence from the certificate of insurance issued to Fagan, the Texas insured, or (2) unless Fagan did not give timely notice to Bankers of his claim, as required by the certificate issued to him.

### 1. *The Exclusion Defense*

■ The certificate issued to Fagan appears on its face to represent the complete contract between the parties. In fact, it

> Hundred and Eighty days after the date of the accident, the Company will pay for

```
Loss of Life...........................The Principal Sum
Loss of both hands or both feet........The Principal Sum
Loss of one hand and one foot..........The Principal Sum
Loss of the entire sight of............The Principal Sum
    both eyes
Loss of the entire sight of one
    eye and one hand or one foot.......The Principal Sum
Loss of one hand or one foot..One-Half The Principal Sum
Loss of the entire sight of
    one eye...................One-Half The Principal Sum
Permanent Total Disablement
    (as defined).......................The Principal Sum
```

2. The certificate defines "Permanent Total Disablement" as follows:

> "Permanent Total Disablement" shall mean Permanent Total Disablement which prevents the Insured Person from engaging in any occupation for which he is qualified by reason of training, education or experience, and payment cannot be made until the expiration of a period of twelve (12) months from the date of the accident.

3. The "Exclusions" also specified by the certificate are set forth as follows:

> The policy does not cover any loss caused or contributed to by (1) suicide or self-destruction or any attempt threat, while sane or

states: "This Certificate contains the provisions affecting the certificate holder of the Master Group Policy under which he is insured * * *." The certificate specifies the agreement to pay a loss "to the extent herein [in the certificate] provided," and repeatedly refers to the coverage in terms of the coverage afforded in or under "this certificate." It specifies the coverage and the definitions under the certificate, and it provides for exclusions, notice of claim, proofs of loss, etc.

The district court held that the certificate (issued to Fagan subsequent to the master policy exclusion) was a full and complete contract of itself between the parties and that it was not reasonable to require the Texas insureds of Bankers to discover an exclusion not specified in their subsequently-issued certificate and hidden in the master policy up in Wisconsin.[4] In so holding, the district court apparently relied, although without citation, upon the Texas decisions cited to it and to us by Fagan, which can be construed to support these holdings: *Combined Insurance Co. of America v. Perry*, 510 S.W.2d 120 (Tex.Civ.App. 1974, writ ref'd); *Republic National Life Insurance Co. v. Blann*, 400 S.W.2d 31 (Tex. Civ.App.1966, no writ); *Connecticut Gener-*

> insane; (2) bacterial infection (except pyogenic infections resulting solely from injury); (3) medical or surgical treatment (except medical or surgical treatment made necessary solely by injury); (4) hernia; (5) war or any act of war; (6) accidents occurring while in military, naval or air force service or operations of any country at war; (7) injury sustained while engaged in or taking part in aeronautics and/or aviation of any description or resulting from being in an aircraft except while a passenger, and not as a pilot or crew member, in any aircraft then licensed to carry passengers.

4. The court also relied upon a provision of the Texas Insurance Code (Revised Civil Statutes of Texas), Article 3.50, Section 2(7), which was effective when the certificate was issued in 1971, that required the insurer under a master policy to issue to each person insured "an individual certificate setting forth a statement as to the insurance protection to which he is entitled."

*al Insurance Co. v. Reese,* 348 S.W.2d 549 (Tex.Civ.App.1961, ref. n. r. e.); *Sherman v. Roe,* 258 S.W.2d 862 (Tex.Civ.App.1953), rev'd in part as to another ground, 153 Tex. 1, 262 S.W.2d 393 (1954).

The defendant Bankers insists that the district court fell into error, in that the certificate on its face has a provision stating that it is "subject to" the provisions of the master policy and that "[i]t forms no part" of the master policy.[5] Bankers forcefully contends that the district court fell into error in failing to apply *Wann v. Metropolitan Life Insurance Co.,* 41 S.W.2d 50 (Tex.Com.App.1931), expressly approved 41 S.W.2d 53 (Tex.1931) and its progeny, *Transport Life Insurance Co. v. Karr,* 491 S.W.2d 446 (Tex.Civ.App.1973, no writ); *Boyd v. Travelers Insurance Co.,* 421 S.W.2d 929 (Tex.Civ.App.1967, writ n. r. e.); *Equitable Life Assurance Society of United States v. Nelson,* 396 S.W.2d 517 (Tex.Civ. App.1965, no writ); *White v. Great American Reserve Assurance Co.,* 342 S.W.2d 793 (Tex.Civ.App.1961, no writ). The thrust of these decisions, under their facts, was that the master policy controlled over ambiguous or contrary provisions in the certificate, at least when the certificate clearly showed that the certificate was subject to the terms and conditions of the master policy.

In our opinion, while Bankers' argument is forceful, the previously cited decisions relied upon by the plaintiff are more applicable to the determination of the issue under the present facts, where the certificate provided apparently complete and self-contained coverage and was issued subsequent to the insertion of the controverted exclusion clause in the master policy up in Wisconsin. Any doubt we might have, however, is dispelled by a subsequent endorsement to the July 1, 1971 certificate (which had contained the "subject to" language). The endorsement, dated August 23, 1971, specifically deleted three of the seven exclusions in the certificate, somewhat modified another, and then concluded that the endorsement "is subject to all the provisions and conditions of the [Master] Policy *not inconsistent herewith* [i.e., with the certificate-endorsement's provisions]." On its face, the certificate as endorsed provides only for four exclusions (suicide, war, military-service accidents, aeronautic accidents), and it in effect provides that the certificate as endorsed prevails over inconsistent master policy provisions (such as, for example, the worker's compensation exclusion).

Accordingly, we find no error in the district court's determination that the exclusion in the master policy does not under the present facts prevail over the apparent coverage provided by the certificate.

*2. The Notice Defense*

The "Notice of Claim" provision of the certificate provides that "*written notice*" must be given the company "within 20 days after the occurrence *or commencement* of any loss covered by the Policy, or as soon thereafter as is reasonably possible."[6] The defendant Bankers points out that, even accepting the factual findings by the district court (which it does not), the evidence shows that only oral notice was given and that this notice was not given until almost 180 days after the March 1975 accident that ultimately resulted in Fagan's total and permanent disability.

---

5. The concluding "Additional Provisions" of the certificate provides:

    This Certificate contains the provisions affecting the Certificate Holder of the Master Group Policy under which he is insured, a copy of which is available for the inspection of any Certificate Holder insured hereunder at the principal office and during the usual business hours of the Policyholder. It is subject to all provisions, conditions and limitations of the Master Group Policy. It forms no part of the Master Group Policy described.

6. The "Notice of Claim" provision provides in full:

    Written notice of claim must be given to the Company within 20 days after the occurrence or commencement of any loss by this Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the insured or the beneficiary to the Company at its Executive Offices, Chicago, Illinois, or to any authorized agent of the Company, with information sufficient to identify the insured, shall be deemed notice to the Company.

The factual showing is that Fagan suffered a back injury in March 1975, but that it was not ascertainable until a later date that the residual consequences of the injury would result in a "loss" for which policy benefits of total and permanent disability were due, under the highly restrictive characterization of the permanent disability so compensable (see note 2). In any event, when prolonged disability became evident, Fagan's wife notified her employer's insurance clerk of the claim, which was within 180 days after the accident. The insurance clerk corroborated this testimony; the insurance clerk also stated that as part of her duties she received the employee's oral reports of claims and ordinarily then sent the notices to Bankers.[7]

On the basis of the record before us, we are unable to say the district court was clearly erroneous in its factual determination that under this evidence notice was timely given. As the district court noted, the policy itself provides that an insured certificate-holder's rights would not be prejudiced by the failure on the part of the employer to transmit reports through inadvertent error or clerical mistake,[8] and the failure of the Insurance Clerk or her superior to transmit immediately a written report of the claim therefore cannot be relied upon by Bankers in its claim that written notice was not received at the time the Fagans orally reported the claim. Further, the evidence in the record is reasonably susceptible to the interpretation that in the course of dealings between Johnson and Bankers over the years, the Johnson insurance clerk was acting as an agent for Bankers in receiving, writing, and forwarding Johnson employee claims to Bankers.

Bankers also argues that the claim should have been made within 20 days of the March 1975 *accident*, while the present claim was not reported until nearly 180 days after it. Well accepted principles that policy ambiguities are construed against the insurer require rejection of this contention. The certificate notice provision (see note 6) requires that notice be given within 20 days "after *commencement* of any *loss . . . or as* soon *thereafter as is reasonably possible.*" Within the meaning of the policy, a total disability "loss" would not arise until the disability ascertainably prevented an insured from engaging in *any* occupation for which he qualified, and no such loss would be payable until after "twelve (12) months from the date of the accident." See note 2. We therefore reject Bankers' contention that the policy contract requires that notice of the claim be given within twenty days of the *accident*. Under present circumstances, we find no error in the district court's finding that notice was timely given under the policy.[9]

*Conclusion*

Accordingly, we affirm the judgment of the district court. AFFIRMED.

---

7. The insurance clerk explained that, although she did not remember communicating the information to Mrs. Fagan, she did not prepare and transmit the claim to Bankers because she understood that a worker's compensation exclusion applied so as to prevent coverage, and she did not know that Fagan's certificate did *not* contain this exclusion clause.

8. The "Inadvertent Error" provision provides:
    The insurance of an Insured Person shall not be prejudiced by the failure on the part of the Employer to transmit reports, pay premiums or comply with any and all of the provisions of this policy when such failure is due to inadvertent error or clerical mistake.

9. We need not now specify whether the notice was timely for which or all of the following reasons: it was made as soon as reasonably possible after the commencement of the loss; it was made before the commencement of the "loss" (if the "loss" for permanent disability under the policy terms does not commence until twelve months after the accident); or it was made within twenty days after "commencement of the loss" (if the loss commenced when indefinite total disability became ascertainable).