Maurice **ROBBINS**, as Executor of the Estate of Charles M. Robbins, Appellant,

v.

**RELIANCE INSURANCE COMPANY and Schneider National Carriers, Inc., Appellees.**

No. 13–00–645–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 1, 2001.

Brent Clark Perry, Patrick Zummo, Zummo, Mitchell & Perry, L.L.P., Houston, for appellant.

Jacqueline Rixen, Austin, Sheryl A. Falk, Terry Fitzgerald, The Woodlands, for appellees.

Before Justices HINOJOSA, YAÑEZ, and AMIDEI.[1]

## OPINION

Opinion by Justice AMIDEI (Assigned).

Appellant Maurice Robbins, as executor of the estate of Charles M. Robbins, appeals from a summary judgment granted in favor of Reliance Insurance Company, appellee. Appellant's suit seeks benefits under an accidental death policy.

Appellant's two issues ask whether the trial court erred, (1) in granting the summary judgment, and (2) in excluding the testimony of Reliance's corporate representative regarding the underlying insurance policy.

Appellee's cross-point number one states that appellant's argument that the 1997 renewal rider is not applicable was not raised in his summary judgment response, and thus cannot be considered on appeal.

### Notice of Stay

Appellee is urging that we afford full faith and credit to a Pennsylvania Commonwealth court order and stay this appeal in accordance therewith. Subsequent to oral arguments, the appellee filed a notice of stay which was unsupported by affidavit as required by rule 3 of this court's local rules, and was not verified as required by Rule 10.2 of the Texas Rules of Appellate Procedure. The Notice of Stay was not accompanied by, nor did it contain, a certificate of conference as required by rule 10.1(a)(5) of the Texas Rules of Appellate Procedure. Further, the order attached to the Notice of Stay and referred to therein was not authenticated as required by the Uniform Enforcement of Foreign Judgments Act. TEX. CIV. PRAC. & REM.CODE ANN. § 35.003 (Vernon 1997). For these reasons we deny the appellee's Notice of Stay.

Assuming *arguendo*, the Notice of Stay has been properly filed and supported, we will consider whether the order is entitled to full faith and credit as contended by appellee. The order apparently was signed on May 29, 2001 by a state court in Pennsylvania. Appellee suggests that pursuant to the order, we should stay this cause, pending rehabilitation by the Insurance Commissioner of Pennsylvania under authority of Pennsylvania law. Appellee argues that we must give full faith and credit to the Pennsylvania order regardless of whether Texas law and policy would dictate the same result. Appellant questions the jurisdiction of the Pennsylvania court to enter an anti-suit injunction to stay or enjoin litigation in Texas because

---

1. Former Justice Maurice Amidei, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

appellant was not subject to the jurisdiction of the court in Pennsylvania which entered the order. Also, appellant points out that Texas has its own statutory scheme for rehabilitating insurers and obtaining stays for such insurers in pending litigation, but appellee has not invoked the Texas statutes and the Texas Insurance Commissioner has not designated appellee as impaired prerequisite to obtaining a stay. Tex. Ins.Code Ann. art. 21.28–C, § 5(9)(A) (Vernon Supp.2000).

We must determine whether the Pennsylvania court had the authority to make an order to command obedience by Texas courts for something the Pennsylvania court lacks authority to resolve. *See Baker by Thomas v. Gen. Motors Corp.,* 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). *Baker by Thomas* held that an injunction barring a former employee from testifying as a witness against a car manufacturer, which was entered by a Michigan county court pursuant to the parties' stipulation in employee's wrongful discharge action against the manufacturer, did not reach beyond the controversy between the employee and the manufacturer to control proceedings elsewhere, thereby, allowing the employee to testify in a Missouri products liability action brought against the manufacturer in federal court without offense to the full faith and credit clause. *Id.* at 238, 118 S.Ct. 657. Orders commanding action or inaction have been denied enforcement in a sister state when they purported to accomplish an official act within the exclusive province of that other state or interfered with litigation over which the ordering state had no authority. *Id.* at 235, 118 S.Ct. 657. Antisuit injunctions regarding litigation elsewhere, even if compatible with due process as a direction constraining parties to the decree, in fact have not controlled the second court's actions regarding litigation in that

court. *Id.* at 236, 118 S.Ct. 657. The Supreme Court observed that it had not yet ruled on the credit due to a state court injunction barring a party from maintaining litigation in another state, although State courts that have dealt with the question have in the main, regarded anti-suit injunctions as outside the full faith and credit ambit. *Id.* In sum, Michigan has no authority to shield a witness from another jurisdiction's subpoena power in a case involving persons and causes outside Michigan's governance. Recognition, under full faith and credit, is owed to dispositions Michigan has authority to order. But a Michigan decree cannot command obedience elsewhere on a matter the Michigan court lacks authority to resolve; full faith and credit need not be given to determinations that it had no power to make. *Id.* at 240–41, 118 S.Ct. 657. To give it the force of a judgment in another State, it must be made a judgment there; and can only be executed in the latter as its laws may permit. Because neither the Full Faith and Credit Clause nor its implementing statute requires Missouri to execute the injunction issued by the courts of Michigan. *Id.* at 242, 118 S.Ct. 657. In the present case, if the Pennsylvania court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given. *Id.* 240–41, 118 S.Ct. 657. *See also, State of Tennessee ex rel. Sizemore Comm'r of Ins., et al. v. Surety Bank,* 200 F.3d 373, 377 (5th Cir. 2000) (where Tennessee commerce and insurance commissioner, who had been appointed receiver for an insolvent, alien, non-domiciliary insurer, commenced action in Texas against a bank that maintained accounts in insurer's name, alleging that the bank violated Tennessee's chancery court's liquidation order by paying assets located in Texas into the registry of a Texas court pending resolution of conflicting claims between the receiver and anoth-

er party.) The *State of Tennessee* case did not give full faith and credit to the Tennessee judgment because under Tennessee law, the Chancery Court lacked jurisdiction to enter the Liquidation and Conservation Orders against the insurer's assets outside of Tennessee. *Id.* at 380. The constitutional command of full faith and credit does not compel Texas courts to defer to a Tennessee court's exercise of jurisdiction where the issue was neither fully and fairly litigated nor involved the same parties as the Texas litigation. Here, to determine whether the Pennsylvania court had jurisdiction, we look to the law of Pennsylvania. *Id.* at 378–79.

■ The order recites that appellee was placed into rehabilitation in accordance with provisions of article V of the Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§ 221.1–221.63. The jurisdiction of Pennsylvania courts to hear any delinquency proceeding is restricted to the Commonwealth Court of the Commonwealth of Pennsylvania. Section 504(a)(d) of the Act, 40 P.S. § 221.4(a)(d). If the court on the motion of any party finds that any action should be tried in a forum outside of Pennsylvania, the court may enter an *appropriate order to stay further proceedings on the action in Pennsylvania.* Section 504(c) of the Act, 40 P.S. 221.4(c) (emphasis supplied). Any receiver appointed in a proceeding under the Pennsylvania Act may apply for and the Commonwealth Court may grant such restraining orders, preliminary and permanent injunctions, inter alia, to prevent the institution or further prosecution of any actions or proceedings, *and the receiver may apply to any court outside of the Commonwealth for such relief.* Section 505(a)(vi), (b) of the Act, 40 P.S. § 221.5(a)(vi), (b) (emphasis supplied). Any Pennsylvania court, on request of the rehabilitator, may stay any

action pending before it against an insurer for such time necessary to obtain representation and prepare for further defense. The rehabilitator shall immediately consider all litigation *pending outside* this Commonwealth and *shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of the insurer.* Section 517(a) of the Act, 40 P.S. § 221.17(a) (emphasis supplied). The Commonwealth Court of Pennsylvania was affirmed by the Pennsylvania Supreme Court in *Grode v. Mut. Fire, Marine & Inland Ins. Co.,* 132 Pa. Cmwlth. 196, 572 A.2d 798, 809–810 (1990), *affirmed in part, remanded in part,* 614 A.2d 1086, 1101, 1102, 1105 (1992) *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1047, where the language of Section 517 of the Act, 40 P.S. § 221.17 in issue regarding litigation outside Pennsylvania was held to recognize that other courts have jurisdiction over pending proceeding which are not within the exclusive jurisdiction of the Commonwealth Court. Therefore, under the law of Pennsylvania, the Commonwealth Court does not have the authority to order a stay of a pending lawsuit in another state. The Pennsylvania statutes only direct the rehabilitator or receiver to petition courts outside Pennsylvania for stays whenever necessary. Appellee's rehabilitator has not petitioned this court for a stay.

■ The order does not show on its face that the Pennsylvania court made a determination of its jurisdiction, and the question of whether it had jurisdiction was not fully and fairly litigated so as to require the application of full faith and credit. *State of Tennessee,* 200 F.3d at 378. Had there been a jurisdiction hearing, the order should have recited that the Commonwealth Court did not have jurisdiction over appellant or any court outside of Pennsylvania. The Pennsylvania court did not

have adjudicatory authority over the subject matter or the appellant who was not a resident of Pennsylvania and was not a party to the Pennsylvania rehabilitation proceedings. The Full Faith and Credit Clause does not compel "a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Baker by Thomas,* 522 U.S. at 232, 118 S.Ct. 657. A court may be guided by the forum State's "public policy" in determining the *law* applicable to the controversy. *Id.* at 233, 118 S.Ct. 657.

The Texas legislature has enacted statutes generally covering Liquidation, Rehabilitation, Reorganization or Conservation of Insurers. TEX. INS.CODE ANN. art. 21.28 (Vernon Supp.2001). The purpose of the provision for rehabilitation to avoid, if possible and feasible, the necessity of temporary or permanent receivership is a matter of public policy and a condition of doing an insurance business in Texas. TEX. INS. CODE. ANN. art. 21.28–A (Vernon Supp. 2001). Life, accident and health insurers doing insurance business in Texas must be a member of an association created by statute to assess members to pay for benefits and continued coverage in the event of the impairment or insolvency of a member. TEX. INS.CODE ANN. art. 21.28–D, § 6(a) (Vernon Supp.2001). The Texas Commissioner of Insurance appoints a board of directors to administer or perform the statutory purposes of the association. TEX. INS.CODE ANN. art. 21.28–D, § 8 (Vernon Supp.2001). To obtain a stay of proceedings, the insurer must first be placed under an order of supervision, liquidation, rehabilitation, or conservation, and be declared an impaired insurer, or unable or potentially unable to fulfill its contractual obligations by the Texas Insurance Com-

missioner. TEX. INS.CODE ANN. art. 21.28–D, §§ 5, 18 (Vernon Supp.2001).

Appellee cites *Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982) and *Bard v. Charles R. Myers Ins. Agency,* 839 S.W.2d 791 (Tex.1992), to support the proposition that injunctions should be given full faith and credit, however these cases and the cases cited therein are not on point as they do not involve the issues of, (1) whether the court issuing the stay order had authority under the law of its state, and (2) whether the issuing court had jurisdiction of the subject matter and parties, and do not involve the public policy issue as in this case. The *Underwriters Nat'l Assurance Co.* court did allow full faith and credit to an Indiana rehabilitation court order, but it was proven the Indiana court had fully and fairly considered whether it had subject-matter jurisdiction to settle prerehabilitation claims of the parties before it. *Underwriters Nat'l Assurance Co.,* 455 U.S. at 715, 102 S.Ct. 1357. If the Pennsylvania court had jurisdiction of the subject-matter and of appellant, it would not matter that Texas had a comprehensive statutory scheme to ensure the protection of Texas policyholders. There is no conflict between the *Underwriters Nat'l Assurance Co.* and *Baker by Thomas.* Both cases recognize that jurisdiction of the ordering state must be shown. Also, the cases of *Brown v. Link Belt Div. of FMC Corp.,* 666 F.2d 110 (5th Cir.1982), and *Bryant v. Shields, Britton & Fraser,* 930 S.W.2d 836 (Tex.App.—Dallas 1996, writ denied), cited by appellee, as well as the *Bard* case do not conflict with *Baker by Thomas* and are not on point with the issues in this case.

█ It would be contrary to Texas law and public policy[2] for a Texas state court

---

**2.** *See, generally,* TEX. INS.CODE ANN. art. 21.28 (Vernon Supp.2001).

to stay a pending case pursuant to an anti-suit injunction or stay order issued by a state court of Pennsylvania unless the relevant Texas Insurance Code provisions relating to stays of pending suits against insurers placed under an order of rehabilitation have been complied with. Compliance with these provisions of the Texas Insurance Code have not been proven.

We reject appellee's request that we stay this appeal.

## Standard of Review

 The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled its initial burden, (1) to establish as a matter of law that there remained no genuine issue of material fact as to one or more *essential* elements of the plaintiffs' cause of action or (2) to establish its affirmative defense to the plaintiffs' cause of action as a matter of law. *See Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To obtain summary judgment based on an affirmative defense, the movant must conclusively establish all elements of the affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). Once the movant establishes an affirmative defense which would bar the suit as a matter of law, the non-movant must then produce summary judgment proof raising a fact issue in avoidance of the affirmative defense. *See Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *See id.* The reviewing court may affirm the granting of the motion for summary judgment on any ground presented by the movant and preserved for appeal. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996).

## Procedural and Factual Background

Appellant filed suit, claiming $250,000 in occupational benefits under the accidental death benefits provisions of the policy issued to Charles Robbins, an independent truck owner-operator, by Reliance Insurance Company. Mr. Robbins died while performing regular duties under his long-term lease agreement with the administrator, Schneider National Carriers. Appellee answered and filed a motion for summary judgment, claiming the estate should receive only $50,000 under the policy because of a renewal rider to the master certificate. The rider limits the benefits to $50,000 when the insured did not have a surviving spouse or children, and Mr. Robbins died in January 1998 without a surviving spouse or children. Appellant's cross-motion for summary judgment and response was that the master certificate regarding the accidental death benefits which provides that the estate is entitled to $250,000, controls over a unilateral renewal rider with a different schedule of benefits number than the schedule benefits on the master certificate, which reduces the benefits from $250,000 to $50,000. After Robbins died, appellee paid $50,000 to Robbins' estate. Appellant then filed this suit alleging the estate was entitled to an additional $200,000.

The trial court granted appellee's motion for summary judgment, sustained appellee's objection to the deposition testimony of Roger Cedarblade, and denied appellant's cross-motion for summary judgment.

## Issues Presented

In issue number one, appellant contends the trial court erred in granting summary judgment to the appellee, and in failing to grant summary judgment to appellant.

 This is a suit for accidental death benefits on an insurance policy on which

the premiums had been paid, and was in full force and effect at the time of the insured's accidental death. Appellant's suit is based on the "renewal certificate" number OARO131755–4, which names Charles M. Robbins as insured and provides $250,000 benefits for accidental death pursuant to the attached schedule number 0A 00 R 012 00 0492.

Appellee contends the "renewal certificate" was somehow superceded by a "renewal rider" with the same effective date as the "renewal certificate," but which reduced the benefits for accidental death from $250,000 to $50,000, the sum appellee has already paid Robbins' estate.

Appellant disputes the applicability or relevance of the "renewal rider" because it is not part of the same master certificate as that of which the "renewal certificate" is made a part. Charles M. Robbins is not named as insured on the "renewal rider." The "renewal rider" refers to and is made a part of master certificate number NOA 1662132, whereas the "renewal certificate" refers to and is made part of the certificate number 0AR0131755–03. The "renewal rider" refers to schedule of benefits number 0A 00 R009 00 0492 whereas the "renewal certificate" refers to schedule of benefits number 0A 00 R 012 00 0492.

▮▮▮▮ Since the "renewal certificate" contains a provision that it is subject to the provisions of the master certificate to which it refers, if not inconsistent with the "renewal certificate," and the "renewal rider" has benefit provisions inconsistent with those of the "renewal certificate," the benefit provisions of the "renewal certificate" control over the benefit provisions of the "renewal rider." *Fagan v. Bankers Multiple Line Ins. Co.*, 669 F.2d 293, 296 (5th Cir.1982)(a certificate endorsement will prevail over a master policy where made subject to all the provisions and conditions of the master policy not incon-

sistent with the certificate's endorsement); *Republic Nat'l Life Ins. Co. v. Blann*, 400 S.W.2d 31, 32 (Tex.Civ.App.—Waco 1966, no writ)(where certificate expressly restricted application of master policy to those provisions "not inconsistent herewith"). Appellee argues that the master policy was modified by the "renewal rider" and as modified, controls over the "renewal certificate." It was not proven the "renewal rider" was part of the same master policy from which the "renewal certificate" was derived. The numbers on the "renewal rider" and the "renewal certificate" do not correspond or match and since there is no named insured on the "renewal rider," and Charles M. Robbins is named on the "renewal certificate," the provisions of the "renewal rider" do not control or in any way affect the "renewal certificate." The two documents were not proven to be related to each other. However, since Charles M. Robbins is the named insured on the "renewal certificate," his estate, through its personal representative, may sue on the certificate for the benefits, and since it described the principal provisions or essential elements of the group policy, it was not necessary to prove up the master policy. *Combined Ins. Co. of Am. v. Perry*, 510 S.W.2d 120, 122 (Tex.Civ. App.—Waco 1974, writ ref'd)(where certificate described the principal provisions of the group policy suit thereon was upheld); *Conn. Gen. Ins. Co. v. Reese*, 348 S.W.2d 549, 550–51 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.);. Appellee does not explain and it is not apparent on the face of the documents how the "renewal rider" amended or became part of Robbins' coverage without his or his contractor/employer's agreement.

▮▮▮▮ Even if the "renewal rider" and the "renewal certificate" evolved from the same master policy and existed simultaneously, with both having the same ef-

fective dates, the conflicting benefit provisions create an ambiguity because they are susceptible to more than one reasonable construction. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex.1987). Where there is a direct conflict between clauses of the policy, or between the application and the policy, the provisions more favorable to the insured will control. *Ind. & O. Live Stock Ins. Co. v. Keiningham*, 161 S.W. 384, 386 (Tex.Civ.App.—Dallas 1913, writ ref'd). It is settled law that when language of a policy is susceptible to more than one construction and ambiguous, it should be strictly interpreted against the insurer and liberally in favor of the insured. *Barnett*, 723 S.W.2d at 666. The insurer's intent to make the benefits a "survivor benefit" like workers compensation plans by limiting accidental death benefits for individuals without heirs, is not indicated by the language of the "renewal rider," if applicable, and even if admissible, such intent does not resolve the ambiguity or alter the benefits provided in the "renewal certificate." Considering the "renewal certificate" and the "renewal rider" and the ambiguity created by the conflicting benefits provisions, we strictly construe the ambiguity against the appellee and liberally in favor of the insured to recover $250,000, less the $50,000 already paid, as provided in the "renewal certificate."

Appellant's issue number one is granted.

▉▉▉▉ In appellant's issue number two, he argues that the trial court erred in the exclusion of the testimony of Reliance's corporate representative regarding the underlying insurance policy. We agree with appellant that the testimony of the corporate representative, Roger Cedarblade, was not to vary, add, or contradict the terms of the written insurance agreement. Appellee's argument to the contrary is based on its assumption there is no ambi-

guity. Since we have found there is ambiguity, if you consider both of the documents in question to have been in effect simultaneously, oral testimony is admissible to determine the true meaning of the instruments. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996). The testimony was to explain that an individual certificate controlled over the master certificate as to the benefits to which an insured was entitled. This testimony was in the nature of a legal opinion rather than to change the terms of the documents. Actually, appellee admits in its brief that, "The deposition testimony that Appellant sought to offer goes directly to Mr. Cedarblade's interpretation of how the various insurance documents at issue interact ...". Mr. Cedarblade's testimony was admissible under two rules of the Texas Rules of Evidence, either as a lay witness or an expert.

### Rule 701. OPINION TESTIMONY BY LAY WITNESSES.

If the witness is not testifying as an expert, the witnesses' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

### Rule 702. TESTIMONY BY EXPERTS.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 701, 702.

Mr. Cedarblade's opinion was rationally based on his perception and was helpful to

a clear understanding of his testimony. Tex.R. Evid. 701. His testimony was technical or specialized knowledge which would assist a trier of fact to understand the evidence; he could testify in the form of an opinion or otherwise as he was qualified by knowledge, skill, experience, training, or education. Tex.R. Evid. 702.

 The trial court erred in excluding Mr. Cedarblade's testimony, but it was harmless error because his testimony was not necessary to appellant's cause of action. Although his testimony may have assisted the trier of fact during the trial, the court decides law questions like the questions posed to Mr. Cedarblade.

Appellant's issue number two is overruled.

 Appellee's cross-point number one contends that appellant's argument that the 1997 renewal rider is not applicable was not raised in his summary judgment response, and thus cannot be considered on appeal. The appellee admits that the Renewal Rider is "truly the central document" in this dispute and relies on it to support its motion for summary judgment. The document was before the trial court, and is part of the record in this appeal. When challenging the legal sufficiency of the movant's proof in the appellate court, the non-movant is not limited to the arguments included in its response to the motion for summary judgment. *Priest v. Tex. Animal Health Comm'n,* 780 S.W.2d 874, 877–78 (Tex.App.—Dallas 1989, no writ). Since no response from the non-movant is required when the movant's summary judgment proof is legally deficient to complain about that legal deficiency on appeal, it stands to reason that the non-movant can raise different and new arguments on appeal. *Hammond v. Katy Indep. School Dist.,* 821 S.W.2d 174, 176 (Tex.App.—Houston [14th Dist.] 1991, no writ)(if no response is filed, there is not an automatic waiver of appellate review). While the rule requires a party to object to defects in the *form* of an affidavit, defects in the *substance* of the proof are not waived despite the lack of an objection. *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 160 (Tex.App.—Waco 1995, no writ). When summary judgment proof is substantially defective, an objection is not required because motions for summary judgment and supporting proof must stand on their own merits, therefore, the non-movant's failure to answer, respond or object cannot supply by default the summary judgment proof essential to establish the movant's right to judgment as a matter of law. *Harley–Davidson Motor Co. v. Young,* 720 S.W.2d 211, 213 (Tex.App.—Houston [14th Dist.] 1986, no writ). It is clear that a non-movant is not required to object to a defect that goes to the very heart of summary judgment proof. *Feldman v. Mfrs. Hanover Mortgage Corp.,* 704 S.W.2d 422, 425 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The appellee has not cited any authorities which support its cross-point number one.

The appellant's complaint as to the renewal rider addresses a substantive defect, and he was entitled to complain of the rider's legal sufficiency on appeal.

Appellee's cross-point number one is overruled.

The motion for summary judgment that the trial court granted the appellee is reversed, and the appellant's motion for summary judgment is rendered in appellant's favor. The cause is remanded for a trial to determine the amount of attorney's fees to which appellant is entitled.