KAYE/BASSMAN INTERNATIONAL CORP., Appellant,

v.

HELP DESK NOW, INC., Appellee.

No. 05–08–01708–CV.

Court of Appeals of Texas, Dallas.

Aug. 24, 2010.

Rehearing Overruled Oct. 4, 2010.

Michael K. Hurst, Vanessa Jean Rush, Gruber Hurst Johansen & Hail LLP, Jason A. Copling, Munsch Hardt Kopf & Harr, P.C., Dallas, TX, for Appellant.

Alan Brandt Daughtry, Houston, TX, for Appellee.

Before Justices O'NEILL, LANG–MIERS, and FILLMORE.

## OPINION

Opinion By Justice LANG–MIERS.

This appeal arises from a dispute about whether appellee Help Desk NOW, Inc. is required to pay certain commissions to appellant Kaye/Bassman International Corp. After both sides moved for summary judgment, the trial court denied Kaye/Bassman's motion and granted summary judgment in favor of Help Desk NOW. On appeal, Kaye/Bassman argues that the trial court erred when it granted summary judgment in favor of Help Desk NOW and denied summary judgment in favor of Kaye/Bassman. We reverse the trial court's summary judgment in part, affirm in part, and remand this cause to the trial court for further proceedings consistent with this opinion.

### BACKGROUND

### The Parties

Help Desk NOW is in the call-center business and contracts with companies to provide call centers for customer service and technical support relating to a company's products or services. Kaye/Bassman is a recruiting and staffing firm that places sales people and executives with clients in various industries, including the call-center industry. According to Kaye/Bassman, it also brings business to its clients who run call centers by introducing those clients to Kaye/Bassman's industry contacts who are aware of companies that need a call center.

### Matt Sherman and Synchronoss Technologies, Inc.

Although the parties apparently disagree about the purpose of the introduction, they agree that Kaye/Bassman introduced Help Desk NOW to a man named Matt Sherman.[1] Sherman subsequently introduced Help Desk NOW to Synchronoss Technologies, Inc., which ultimately became a call-center client of Help Desk

---

1. Kaye/Bassman essentially contends that it introduced Sherman to Help Desk NOW so that Sherman could help broker call-center business for Help Desk NOW. In contrast, Help Desk NOW contends that Kaye/Bassman introduced Sherman to Help Desk NOW as one of several candidates for potential employment by Help Desk NOW as a salesman. According to Help Desk NOW, the initial agreement was that Help Desk NOW would pay Kaye/Bassman a percentage of the first year of a candidate's salary upon hiring. Help Desk NOW interviewed Sherman by telephone and decided not to hire him.

NOW. In exchange for the client referral, Help Desk NOW agreed to pay a commission to Sherman.

### The Parties' Agreements

Although the parties also apparently disagree about how, exactly, the agreement came about, they agree that in July 2004, around the time that Sherman introduced Help Desk NOW to Synchronoss, Kaye/Bassman and Help Desk NOW entered into a Call Center Business Agreement (the Original Agreement) governing Help Desk NOW's payment of commissions to Kaye/Bassman.[2] The Original Agreement states, in relevant part, as follows:

1. **Prospective Clients**—[Kaye/Bassman] agrees to refer certain business prospects/clients to Help Desk Now.[3] [Kaye/Bassman] will earn fees based on the percentage of revenue generated from the production of business prospects/clients introduced by [Kaye/Bassman].

2. **Fee paid to [Kaye/Bassman]**— Help Desk Now agrees to pay [Kaye/Bassman] 2.5% of the billed revenue that Help Desk Now earns from any and all revenues generated through [Kaye/Bassman] and their efforts on Help Desk Now's behalf. [Kaye/Bassman] will receive payments of these fees as long as Help Desk Now continues to collect on billed revenues from the work introduced by business prospects/clients through [Kaye/Bassman].

. . .

It is understood and agreed to by both parties that for any specific opportunity the commission structure may be mutually adjusted in order to successfully win the business opportunity.

5. **Termination**—Either party may terminate this agreement by providing 30 days written notice. [Kaye/Bassman] will continue to receive fee payment as long as Help Desk Now continues to generate revenue from the referral client or referred business.

In October 2004, Synchronoss signed a call-center agreement with Help Desk NOW and became Help Desk NOW's biggest client. Pursuant to the terms of the Original Agreement, Help Desk NOW paid Kaye/Bassman 2.5% of the billed revenue from the Synchronoss account.

Over the next sixteen months, Sherman referred three other clients to Help Desk NOW. Help Desk NOW and Kaye/Bassman entered into two addenda to the Original Agreement to address the commissions to be paid to Kaye/Bassman from revenues generated from the first two of those three clients. They disagreed about whether Kaye/Bassman was entitled to any commission from the third client, Cap-Gemini Energy. To resolve that dispute, the parties entered into a third addendum to the Original Agreement, in which Help Desk NOW agreed to pay Kaye/Bassman 1% of the billed revenue from the Cap-

---

2. According to Kaye/Bassman, the parties entered into the Original Agreement before Kaye/Bassman disclosed, through Sherman, Synchronoss as a potential client. In contrast, according to Help Desk NOW, Sherman introduced Help Desk NOW to Synchronoss independently, not as Kaye/Bassman's agent, and the parties later entered into the Original Agreement after Kaye/Bassman threatened to derail the Synchronoss contract unless Help Desk NOW compensated Kaye/Bassman.

3. The last word in Help Desk NOW's name is not spelled in all-caps in some of the pleadings and summary-judgment evidence. But Help Desk NOW spells the last word of its name in all-caps in its appellee's brief. Accordingly, we spell "NOW" in all-caps in this opinion unless we are quoting from one of the places in the clerk's record where it is not spelled in all-caps.

Gemini Energy account. Six months later, in November 2005, the parties signed a fourth and final addendum (the Fourth Addendum) to the Original Agreement. The Fourth Addendum states, in relevant part, as follows:

This Addendum is to both the [O]riginal Agreement between the parties, dated July 27, 2004, and the [Third] Addendum dated May 13, 2005. As part of the agreement between the parties wherein Help Desk NOW would pay Kaye/Bassman for the CapGemini Energy contract, the following stipulations were also agreed upon by both parties and are hereby included in all agreements heretofore consummated by the parties:

1. That any contract that Help Desk NOW enters into with an existing or new Help Desk NOW client will not entitle Kaye/Bassman or Mr. Eddie Hill any [sic] fee or other compensation unless agreed upon in writing in advance of Help Desk NOW entering into such contracts.

. . .

3. It is expressly understood by both parties that Mr. Matthew Sherman no longer has any business relationship with Kaye/Bassman and/or Mr. Eddie Hill that would encumber Help Desk NOW or prevent Help Desk Now from doing business with Mr. Sherman. If Mr. Sherman brings another deal to Help Desk NOW that results in a contract, neither Kaye/Bassman nor Eddie Hill would be entitled to any fee or other compensation from Help Desk NOW.

4. Help Desk NOW appreciates the involvement it has had with Kaye/Bassman to date and will meet its financial obligations to Kaye/Bassman as per the [Original]

Agreement between the parties and the subsequent Addendums, including this one.

5. Help Desk NOW is now aware of how Kaye/Bassman expects to be compensated for future deals that Help Desk NOW may participate in as a result of the efforts of someone that Kaye/Bassman has introduced to Help Desk NOW. Other than any future deals that Matt Sherman may bring to Help Desk NOW, as covered in item 3, above, Help Desk NOW agrees that Kaye/Bassman is entitled to be compensated for the deals that someone that they introduced to us as a client that they represent, and all future deals within a time frame of two (2) years from the date of the last deal that the introduced Kaye/Bassman client helped Help Desk NOW close. The amount and duration of such compensation for all deals will be negotiated between Help Desk NOW and Kaye/Bassman. Unless the Kaye/Bassman client is identified as a Kaye/Bassman client by Kaye/Bassman or by the Kaye/Bassman client prior to Help Desk NOW closing an agreement for services, Help Desk NOW will not be liable for any payments to Kaye/Bassman or any of Kaye/Bassman's employees.

Six months later, in May 2006, Help Desk NOW and Synchronoss entered into an agreement regarding call center services and pricing that superseded all previous agreements between them (the 2006 Synchronoss Agreement).[4] For the first few months after the 2006 Synchronoss Agreement was signed, Help Desk NOW continued to pay commissions to Kaye/Bassman for Synchronoss billed rev-

_____

4. The parties disagree about whether and to what extent the 2006 Synchronoss Agreement was different from Help Desk NOW's previous contracts with Synchronoss.

enue. After that, and for the next few months, Help Desk NOW did not pay those commissions to Kaye/Bassman but repeatedly assured Kaye/Bassman that it would continue to pay those commissions.

In early 2007 Help Desk NOW was sold. The buyers interpreted the Fourth Addendum to mean that it did not owe commissions to Kaye/Bassman for revenues generated from the Synchronoss relationship as of the date of the 2006 Synchronoss Agreement.

### This Lawsuit

In May 2007, Help Desk NOW filed this lawsuit seeking a declaratory judgment "as to its rights and obligations with respect to Kaye/Bassman." In its petition, Help Desk NOW states that because of the Fourth Addendum, Kaye/Bassman is not entitled to any commissions based on the 2006 Synchronoss Agreement. In response, Kaye/Bassman filed (1) an answer asserting a general denial and numerous affirmative defenses, including lack of consideration and (2) a breach-of-contract counterclaim seeking damages for unpaid Synchronoss commissions and attorneys' fees. In its amended answer and counterclaim, Kaye/Bassman alleges that, under the terms of the Original Agreement and the Fourth Addendum, Help Desk NOW is obligated to continue paying Kaye/Bassman 2.5% of all billed revenues generated from the Synchronoss account.

### The Motions for Summary Judgment

Help Desk NOW filed a traditional motion for summary judgment under rule of civil procedure 166a(c) in which it argued that it is not obligated to pay commissions to Kaye/Bassman for revenue generated as a result of the 2006 Synchronoss Agreement because of the terms of the Fourth Addendum. Help Desk NOW also filed a no-evidence motion for summary judgment

under rule of civil procedure 166a(i) in which it asserted that there was no evidence to support Kaye/Bassman's counterclaim or certain elements of its affirmative defenses.

Kaye/Bassman filed a cross-motion for summary judgment under rule of civil procedure 166a(c) in which it asserted the same three grounds for summary judgment to support its affirmative claim for breach of contract and to oppose Help Desk NOW's competing claim for declaratory judgment: (1) Help Desk NOW breached the Original Agreement by failing to pay commissions on the Synchronoss account, (2) there was no consideration for the Fourth Addendum, and (3) the Fourth Addendum is ambiguous and extrinsic evidence conclusively demonstrates that the parties did not intend for it to apply to any commissions on the Synchronoss account.

Help Desk NOW filed and cited summary-judgment evidence to support its motion for summary judgment and filed a written response to Kaye/Bassman's motion. Kaye/Bassman filed a combined response to Help Desk NOW's motions under rules 166a(c) and 166a(i) and also filed and cited summary-judgment evidence to support its response to each motion.

The trial court signed a final judgment granting Help Desk NOW's two motions for summary judgment in their entirety and denying Kaye/Bassman's motion for summary judgment in its entirety. In its final judgment the trial court also (1) declared that, under the terms of the Fourth Addendum, Help Desk NOW is not required to pay Kaye/Bassman any commissions or other compensation relating to Synchronoss on or after the date the 2006 Synchronoss Agreement was executed, and (2) denied Kaye/Bassman's request for attorneys' fees.[5]

---

5. Help Desk NOW's amended petition included a request for attorneys' fees under the

declaratory judgments act. *See* TEX. CIV. PRAC.

## ISSUES ON APPEAL

On appeal Kaye/Bassman challenges the trial court's summary-judgment order granting Help Desk NOW's two motions for summary judgment and denying Kaye/Bassman's motion for summary judgment.

## SUMMARY JUDGMENT AND STANDARD OF REVIEW

A party moving for traditional summary judgment under rule of civil procedure 166a(c) is charged with the burden to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Ysasaga v. Nationwide Mut. Ins. Co.*, 279 S.W.3d 858, 864–65 (Tex.App.-Dallas 2009, pet. denied). If the movant discharges its burden, the burden shifts to the nonmovant to present to the trial court any issues that would preclude summary judgment. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied). When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law; neither party can prevail because of the other's failure to discharge its burden. *Id.*

We review a traditional summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dallas Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 929 (Tex. App.-Dallas 2010, no pet.). When both parties move for traditional summary judgment and the trial court grants one motion and denies the other, the non-prevailing party may appeal both of those rulings. *See Certain Underwriters at Lloyd's v. LM Ericsson Telefon, AB,* 272 S.W.3d 691, 694 (Tex.App.-Dallas 2008, pet. denied). We review the summary-judgment evidence presented by both parties and determine all questions presented. *Id.* To determine if a genuine issue of material fact precludes summary judgment, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). With respect to each side's motion, we consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and resolve any doubts against the movant. *Id.* at 756. We may affirm the trial court's summary judgment, reverse and render judgment for the other party if appropriate, or reverse and remand if neither party has met its summary-judgment burden. *Certain Underwriters at Lloyd's,* 272 S.W.3d at 694.

When a party moves for no-evidence summary judgment and argues that there is no evidence of an essential element of the nonmovant's claim or defense, the burden shifts to the nonmovant to present more than a scintilla of evidence that raises a genuine fact issue on the challenged elements. Tex.R. Civ. P. 166a(i) & cmt.; *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003). Our inquiry focuses on whether the nonmovant produced more

& REM.CODE ANN. § 37.009 (Vernon 2008). But during a telephonic hearing that occurred after the hearing on the motions for summary judgment, and before the final judgment was signed by the trial court, Help Desk NOW agreed to "abandon" its claim for attorneys' fees under the declaratory judgments act so that the trial court's judgment "could be final."

than a scintilla of probative evidence to raise a fact issue on the challenged elements. *See id.* at 751.

### ANALYSIS OF CROSS-MOTIONS UNDER RULE 166A(C)

### Did Help Desk NOW Meet Its Summary–Judgment Burden?

In its traditional motion for summary judgment, Help Desk NOW argued that it was entitled to judgment declaring that it is not obligated to pay Kaye/Bassman commissions for billed revenue relating to the 2006 Synchronoss Agreement and that Kaye/Bassman should be denied any relief on its breach-of-contract counterclaim.

In order for Help Desk NOW to be entitled to summary judgment, it was Help Desk NOW's burden to demonstrate that its construction of the Fourth Addendum is the only reasonable interpretation. *See Hackberry Creek Country Club*, 205 S.W.3d at 56, 62. In its summary-judgment motion, Help Desk NOW argued that, under the terms of paragraph 1 of the Fourth Addendum, Help Desk NOW is not obligated to pay any commissions to Kaye/Bassman for revenue generated from the 2006 Synchronoss Agreement because the parties did not agree in writing that Kaye/Bassman would be entitled to those commissions "in advance of [Help Desk NOW's] entering into" that contract.

■■■ When construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003). We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex.2005) (per curiam); *J.M. Davidson*, 128 S.W.3d at 229. When the provisions of a contract appear to conflict, we will attempt to harmonize the provisions and assume the parties intended every provision to have some effect. *See United Protective Servs., Inc. v. West Village Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex.App.-Dallas 2005, no pet.). In doing so, however, we need not embrace strained rules of interpretation in order to avoid ambiguity at all costs. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex.1987). If we are unable to harmonize the provisions and give effect to all its clauses, the contract is susceptible to more than one reasonable interpretation and is thus ambiguous. *Hackberry Creek Country Club*, 205 S.W.3d at 56. It is improper to grant a motion for summary judgment when a contract is ambiguous because the interpretation of the contract is a fact issue. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983); *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979).

■■■ Help Desk NOW's construction of the Fourth Addendum is based strictly on paragraph 1. But a court cannot consider a single provision in isolation and instead must consider the entire agreement and attempt to harmonize and give effect to all the provisions. *See Frost Nat'l Bank*, 165 S.W.3d at 312. Among the other provisions of the Fourth Addendum, paragraph 4 purports to reaffirm Help Desk NOW's obligations under the Original Agreement. Although the Original Agreement does not reference Synchronoss by name, it is undisputed that the Original Agreement applied to Synchronoss. And under the terms of the Original Agreement, as quoted above, Help Desk NOW is obligated to pay commissions to Kaye/Bassman for as long as Help Desk NOW continues to collect on billed revenue from Synchronoss. As a result, Help Desk NOW's construction does not avoid an ambiguity. We conclude that Help Desk NOW did not meet its burden to demon-

strate that its construction of the Fourth Addendum is the only reasonable interpretation. *See Hackberry Creek Country Club*, 205 S.W.3d at 56, 62. As a result, we conclude that the trial court erred when it granted summary judgment in favor of Help Desk NOW on its traditional motion for summary judgment. *See id.* at 63–64 (because movant's proposed construction of agreement did not avoid an ambiguity trial court erred in granting summary judgment).

## Did Kaye/Bassman Meet Its Summary–Judgment Burden?

In its motion for summary judgment, Kaye/Bassman generally argued that it was entitled to continue receiving commissions on the Synchronoss account, and it raised three alternative summary-judgment grounds to support that general argument. First, Kaye/Bassman argued that there was no consideration for the Fourth Addendum because the only possible consideration was past consideration. Second, it argued that the Fourth Addendum is ambiguous and should be construed in its favor. And third, it argued that the Fourth Addendum is unambiguous and applies only to the CapGemini account. In its motion, Kaye/Bassman sought a judgment declaring that the Fourth Addendum is unenforceable and that the Original Agreement and the first, second, and third addenda are enforceable. Kaye/Bassman also sought a judgment awarding $429,658.06 in damages, along with interest and attorneys' fees.

### Kaye/Bassman's First Ground: the Fourth Addendum Lacked Consideration

■ Kaye/Bassman's principal argument below and on appeal is that the Fourth Addendum is unenforceable be-

cause it lacked consideration. Lack of consideration is an affirmative defense. *See* Tex.R. Civ. P. 94. And because Kaye/Bassman moved for summary judgment on its own affirmative defense, the burden was on Kaye/Bassman to establish that it was entitled to judgment as a matter of law on that defense. *See generally Garza v. CTX Mortg. Co., LLC*, 285 S.W.3d 919, 922 (Tex.App.-Dallas 2009, no pet.).

■ Kaye/Bassman argued below that there was no consideration to support the Fourth Addendum because the only consideration was past consideration. To support its argument, Kaye/Bassman relied on the Fourth Addendum itself, which it contended does not reflect any present consideration. It also relied on an excerpt from the deposition of Help Desk NOW's corporate representative, Michael O'Neil, in which he testified that he did not see an additional benefit to Kaye/Bassman reflected in the terms of the Fourth Addendum. In response to Kaye/Bassman's argument, Help Desk NOW argued that the second sentence in the Fourth Addendum's preamble recites the consideration for that agreement:

> As part of the agreement between the parties wherein Help Desk NOW would pay Kaye/Bassman for the CapGemini Energy contract, the following stipulations were also agreed upon by both parties and are hereby included in all agreements heretofore consummated by the parties.

Help Desk NOW also cited excerpts from the deposition of Kaye/Bassman's President and Chief Executive Officer, Jeffrey Kaye, in which he testified that the dispute over commissions for the CapGemini Energy contract precipitated the Fourth Addendum.[6]

---

**6.** Help Desk NOW also argued in a footnote in its summary-judgment response, as it does in a footnote in its appellee's brief, that

Kaye/Bassman's statement in its counterclaim that the Fourth Addendum is a "valid con-

On appeal Kaye/Bassman argues that the Fourth Addendum "must be found void" for lack of consideration. To support its argument, Kaye/Bassman relies on summary-judgment evidence—in particular, deposition testimony—that it argues must be construed "in the light most favorable to Kaye/Bassman." We cannot construe the evidence related to consideration in favor of Kaye/Bassman, however, because Kaye/Bassman moved for traditional summary judgment on its own affirmative defense, and we must construe summary-judgment evidence in favor of the nonmovant. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991). Nevertheless, we do not need to decide the issue of whether Kaye/Bassman proved that the Fourth Addendum lacked consideration, because even if we assume that Kaye/Bassman met its initial burden to prove a lack of consideration, and also assume that the burden shifted to Help Desk NOW to raise a fact issue, we conclude that Help Desk NOW met that burden. Construing the evidence in the light most favorable to Help Desk NOW, the Fourth Addendum's preamble suggests that the Fourth Addendum did not require new consideration because it simply memorialized the additional terms of the parties' earlier agreement. *See, e.g., Mitchell v. Lawson,* 444 S.W.2d 192, 195–96 (Tex.App.-San Antonio 1969, no writ) (concluding agreement did not require new consideration because it "was in completion and consummation" of earlier agreement, "and merely carried into effect the whole agreement"). This reading is further supported by Kaye's deposition testimony that the dispute over commissions for the CapGemini Energy contract precipitated the Fourth Addendum. Alternatively, even if the Fourth Addendum is only ambiguous with respect to whether it is supported by consideration, because it could reasonably be construed in favor of consideration, we must indulge that construction because it favors Help Desk NOW, the nonmovant. *See Roark,* 813 S.W.2d at 496. Construing the summary-judgment evidence in favor of Help Desk NOW, as we must, we conclude that the trial court did not err in denying Kaye/Bassman's motion for summary judgment on its affirmative defense of lack of consideration. *See id.*

### Kaye/Bassman's Second Ground: the Fourth Addendum is Ambiguous

As an alternative to its argument that the Fourth Addendum lacked consideration, Kaye/Bassman argued in its motion for summary judgment that the Fourth Addendum is ambiguous for the following three reasons:

- First, it is unclear from the language of [the Fourth Addendum] whether the "new or existing clients" language in Paragraph 1 is meant to apply to all new or existing clients of Help Desk Now, or only those to which Kaye/Bássman was related.

- Second, it is unclear from the language whether "existing" clients was meant to include Synchronoss, since Synchronoss is not mentioned otherwise in the [Fourth Addendum] and the only existing client (that was related to

---

tract[ ]" constitutes a judicial admission and defeats Kaye/Bassman's claim that it lacked consideration. But the statement in its counterclaim that the Fourth Addendum is a "valid contract" was pleaded in the alternative to its affirmative defense that the Fourth Addendum lacked consideration. Because it was pleaded in the alternative, we conclude that

the statement does not constitute a judicial admission. *City of Dallas v. Hillis,* 308 S.W.3d 526, 531–32 (Tex.App.-Dallas 2010, pet. filed) (to constitute judicial admission, statement in live pleading must be clear, deliberate, unequivocal, and not pleaded in the alternative).

Kaye/Bassman) that is mentioned in the [Fourth Addendum] in [sic] Cap-Gemini.

- Third, it is ambiguous from the language of [the Fourth Addendum] whether "any contract," as stated in paragraph 1 of [the Fourth Addendum], means any contract at all or any contract with new and substantially different terms.[7]

Kaye/Bassman further argued that undisputed parol evidence demonstrates that the Fourth Addendum should be construed in its favor as a matter of law. More specifically, Kaye/Bassman relied upon the following excerpts from O'Neil's deposition to prove that the Fourth Addendum does not apply to commissions generated from the Synchronoss account:

Q. Did Fred Riek, the man who drafted [the Fourth Addendum], who you said never said, at least in your presence, that [the Fourth Addendum] related to Synchronoss, did he ever personally dispute any of the moneys that Kaye/Bassman said were due and owing?

A. Not to my knowledge, I . . . [8]

Q. He never said anything like, Wow, this $117,000 that we owe Kaye/Bassman, that seems like a lot of money; doesn't the contract cut off the time that Kaye/Bassman's supposed to be paid? Did he say anything like that in your presence?

A. Not in my presence.

. . .

Q. Okay, so is it safe to say as of October of 2006, Help Desk NOW still thought that they had to contin-ue paying Kaye/Bassman on the Synchronoss business.

A. Yes. At that time, yes.

. . .

Q. I'm looking at Exhibit No. 35 [dated March 23, 2007], where Mr. Carriker is saying that he's going to send post dated checks to Kaye/Bassman for Synchronoss business, correct?

A. So—yes. So Lynn Carriker believed that to be true, I'm sure.

Q. Okay. And Lynn Carriker was the CFO of the company; is that correct?

A. Yes.

Q. And nobody told him otherwise, did they?

A. No.

Kaye/Bassman also cited the following excerpt from O'Neil's deposition to prove that Help Desk NOW first questioned the commissions owed on the Synchronoss account after the potential buyers (who ultimately became the new owners) "read through the Addenda and pointed out to Help Desk Now's management that the ambiguous language could be read in a way that the parties had not intended":

Q. And the decision was made to stop paying Kaye/Bassman right after the acquisition of Help Desk NOW by the two Indian gentlemen; is that correct?

A. They were definitely involved in that decision, sure.

Q. But I'm talking about from a timing standpoint, the decision was made to stop paying Kaye/Bassman right

---

7. On appeal, Kaye/Bassman also argues that the Fourth Addendum is ambiguous for an additional reason: because paragraph 1 conflicts with paragraph 4. This argument cannot be considered on appeal, however, because it was not presented to the trial court as a ground for summary judgment in favor of Kaye/Bassman. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993).

8. Ellipsis in original.

after the two Indian gentlemen acquired Help Desk NOW?

A. Yes.

In its response, Help Desk NOW argued that the Fourth Addendum should be construed as a matter of law to preclude any further commissions on the Synchronoss account, again relying exclusively on paragraph 1.

Even if the Fourth Addendum is ambiguous, however, the parol evidence relied upon by Kaye/Bassman does not conclusively demonstrate that the Fourth Addendum should be construed in favor of Kaye/Bassman as a matter of law. Based on the summary-judgment arguments and evidence in this case, we conclude that Kaye/Bassman did not meet its burden to demonstrate that it was entitled to summary judgment on the ground that the Fourth Addendum should be construed as a matter of law in favor of Kaye/Bassman. *See, e.g., Hackberry Creek Country Club,* 205 S.W.3d at 57–64 (on cross-motions for summary judgment concerning interpretation of contract, neither party met its respective burden to demonstrate that it was entitled to judgment as a matter of law); *see generally Coker,* 650 S.W.2d at 394 ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").

### Kaye/Bassman's Third Ground: the Fourth Addendum is Unambiguous

 Kaye/Bassman primarily relied in the trial court, as it does in this appeal, on its alternative arguments that the Fourth Addendum lacked consideration or is ambiguous and should be construed in its favor. It also argued below, in the alternative, that the Fourth Addendum is unambiguous and applies exclusively to the CapGemini Energy account. Kaye/Bassman does not reassert that alternative argument on appeal. Instead, Kaye/Bassman argues that the Fourth Addendum is unambiguous and could be construed in its favor because paragraphs 1 and 4 can be read in harmony as requiring Help Desk NOW to pay commissions to Kaye/Bassman on revenues generated as a result of the 2006 Synchronoss Agreement. More specifically, Kaye/Bassman notes that paragraph 1 requires an agreement in writing in advance of any agreement with a new or existing client. And it argues that it *did* have an agreement in writing in advance of the 2006 Synchronoss Agreement—namely, the Original Agreement. In other words, Kaye/Bassman argues on appeal that the Original Agreement is the written agreement required by paragraph 1 of the Fourth Addendum—and that paragraph 4 further confirms that Help Desk NOW would continue to pay commissions to Kaye/Bassman on the Synchronoss account for as long as Help Desk NOW continues to receive revenues on that account, as required by the Original Agreement. This argument cannot be considered on appeal, however, because it was not presented to the trial court as a ground for summary judgment in favor of Kaye/Bassman. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

### Kaye/Bassman's Mutual– Mistake Argument

 On appeal Kaye/Bassman also argues that the Fourth Addendum must be reformed as a matter of law because it contains a mutual mistake. However, Kaye/Bassman did not move for summary judgment in the trial court on its affirmative defense of mutual mistake. Instead, in response to Help Desk NOW's no-evidence motion for summary judgment on Kaye/Bassman's affirmative defense of mutual mistake, Kaye/Bassman cited evidence to support that affirmative defense

in order to defeat Help Desk NOW's no-evidence motion for summary judgment.

On appeal, Kaye/Bassman does not argue that it raised a fact issue on its affirmative defense of mutual mistake. Instead, it essentially asks this Court to grant summary judgment in its favor on its affirmative defense of mutual mistake. But we can address only grounds for summary judgment that were raised in writing in the trial court. *See* Tex.R. Civ. P. 166a(c); *see also McConnell*, 858 S.W.2d at 341; *Hackberry Creek*, 205 S.W.3d at 50 (all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court). As a result, we do not address Kaye/Bassman's argument on appeal that the Fourth Addendum should be reformed as a matter of law due to mutual mistake. *See* Tex.R. Civ. P. 166a(c).

### Analysis of No-Evidence Motion Under Rule 166a(i)

In its amended answer, Kaye/Bassman pleaded the following "affirmative defenses" to Help Desk NOW's declaratory-judgment claim: lack of consideration, ambiguity, estoppel, fraud, laches, release, waiver, "no meeting of minds," mutual mistake, and breach of contract. In its no-evidence motion for summary judgment, Help Desk NOW argued that there was no evidence to support certain elements of each of those affirmative defenses. After Kaye/Bassman responded to the no-evidence motion and cited to evidence supporting the challenged elements of its affirmative defenses, the trial court granted the no-evidence summary judgment motion in its entirety.

■■■ With respect to two of Kaye/Bassman's affirmative defenses—lack of consideration and ambiguity—those defenses were the subject both of Kaye/Bassman's motion for summary judgment under rule 166a(c), and Help Desk NOW's no-evi-

dence motion for summary judgment under rule 166a(i). In the trial court, Kaye/Bassman responded to Help Desk NOW's no-evidence motion for summary judgment on those affirmative defenses and cited evidence to demonstrate that the Fourth Addendum lacked consideration and was ambiguous. On appeal, Kaye/Bassman argues that its summary-judgment evidence proves that the Fourth Addendum lacked consideration or is ambiguous, and it supports those arguments with citations to its summary-judgment evidence. As a result, we conclude that the trial court erred when it granted no-evidence summary judgment in favor of Help Desk NOW on Kaye/Bassman's affirmative defenses of lack of consideration and ambiguity. *See generally Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex.2003) (no-evidence summary judgment is improper if nonmovant presents more than scintilla of evidence supporting disputed issue).

■■■ With respect to Kaye/Bassman's other affirmative defenses, however, we cannot reverse the trial court's order granting no-evidence summary judgment against Kaye/Bassman on those defenses. Kaye/Bassman argues generally on appeal that the trial court erred in granting the no-evidence motion for summary judgment. But with respect to its other affirmative defenses, Kaye/Bassman does not argue that the trial court erred because Kaye/Bassman's summary-judgment evidence raised a fact issue sufficient to meet its burden under rule 166a(i) and preclude summary judgment on those affirmative defenses. Instead, it argues that its affirmative defenses "defeat[ ] [Help Desk NOW's] deceitful efforts to deny Kaye/Bassman of its contractual right to commissions on the Synchronoss business," and prevent Help Desk NOW "from prevailing on its disingenuous attempt to

avoid its contractual obligations." Kaye/Bassman also states that (1) Help Desk NOW "committed fraud and fraudulent inducement and should be estopped from denying that it owes Synchronoss commissions to Kaye/Bassman"; (2) Help Desk NOW "has released its claim that [the Fourth Addendum] applies to the Synchronoss account"; (3) and Help Desk NOW "has waived its claim that [the Fourth Addendum] applies to the Synchronoss account." In other words, Kaye/Bassman argues on appeal that its affirmative defenses precluded the trial court from granting Help Desk NOW's traditional motion for summary judgment; Kaye/Bassman does not argue that it defeated Help Desk NOW's no-evidence motion for summary judgment on Kaye/Bassman's other affirmative defenses by raising a fact issue. Kaye/Bassman also states that it submitted "ample evidence" to support its release and waiver defenses, but it does not identify which summary-judgment evidence it claims supports those two defenses, nor does it describe how or why its summary-judgment evidence supports those two defenses. As a result, we affirm the no-evidence summary judgment against Kaye/Bassman on its other affirmative defenses.

## CONCLUSION

We conclude that neither party met its burden to demonstrate that it was entitled to traditional summary judgment on its claim or the other party's claim. We reverse the trial court's summary judgment in favor of Help Desk NOW and affirm the trial court's denial of Kaye/Bassman's motion for summary judgment. We also reverse the no-evidence summary judgment against Kaye/Bassman on its affirmative defenses of lack of consideration and ambiguity, and affirm the no-evidence summary judgment against Kaye/Bassman on its other affirmative defenses. We remand this cause to the trial court for further proceedings consistent with this opinion.