MICHAEL SILVERMAN, Plaintiff-Appellant, v. ECONOMY FIRE AND CA-SUALTY COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—93—1334

Opinion filed May 8, 1995.

Fishman & Fishman & Saltzberg, P.C., of Chicago (Gerald B. Saltzberg, John C. Pendergast, Scott D. Stephenson, and Carol Collins, of counsel), for appellant.

Williams & Montgomery, Ltd., of Chicago (James K. Horstman, Barry L. Kroll, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Sometimes it's not the words that matter, it's how dark they are. This insurance coverage case turns on our analysis of boldface type.

On February 19, 1984, Economy Fire and Casualty Company (Economy) issued a renewal of an automobile liability insurance policy to Michael Silverman's business. About five months later, on July 27, Silverman was seriously injured when his car collided with the car driven by Thomas Casale.

On June 7, 1985, Silverman sued Casale, who was covered by a policy with a limit of $100,000.

On September 19, 1990, Casale's insurer offered the entire $100,000 to settle the case with Silverman. On that same date, Silverman made a claim for benefits to Economy under its underinsured motorist and medical pay provisions. Economy refused to honor the claim for underinsured motorist coverage, claiming Silverman failed to make a demand for arbitration within two years of the accident.

The lawsuit against Casale was settled on January 31, 1991. Less than a month later, on February 20, Silverman filed this declaratory judgment suit against Economy. Both sides filed motions for summary judgment. The trial court granted Economy's motion, holding that Silverman did not file his lawsuit or make a written demand for arbitration within two years of the loss, as required by the policy. (Economy never has claimed it received untimely notice of the accident.)

That order is the subject of this appeal. The issue presented is whether the time of "loss" for this claim is the date of the accident or the date that Silverman's lawsuit against Casale was resolved. We reverse the order granting Economy's motion for summary judgment and remand for further proceedings.

THE INSURANCE POLICY

The Economy policy, in part I, reads as follows:

> **"WORDS AND PHRASES WITH SPECIAL MEANING— READ THEM CAREFULLY**
>
> The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used ***
>
> H. **'Loss'** means direct and accidental damage or loss."

The uninsured motorists insurance amendatory endorsement, which applies to underinsured motorist coverage, contains the limitation clause at issue in this case:

> "3. No suit, action or arbitration proceedings for the recovery of any claim under Uninsured Motorists Coverage shall be sustainable in any court of law or equity unless the insured shall have fully complied with all of the terms of this policy, nor unless commenced within two (2) years after the occurrence of the loss."

Section III of the endorsement provides:

> "The conditions, exclusions, and general provisions of the policy applicable to Family Protection Coverage/Uninsured Motorists Coverage shall apply to this endorsement except the 'Limits of Liability' provisions."

DECISION

Economy contends, and the trial court agreed, that the definition

of "loss" in the section entitled **"WORDS AND PHRASES WITH SPECIAL MEANING"** (WPSM) is specific and controlling.

Since this lawsuit was not filed within two years of the date of the accident, says Economy, it was not filed within two years of the "direct and accidental damage or loss" and therefore is untimely.

Silverman, of course, does not agree. He contends the definition of the boldface **"loss"** in the WPSM does not apply to the non-boldface type "loss" in the limitation clause of the endorsement. What's more, he says, the non-boldface "loss" is ambiguous and should be construed against the insurer.

Economy relies on *Shelton v. Country Mutual Insurance Co.* (1987), 161 Ill. App. 3d 652, 515 N.E.2d 235. *Shelton* stands for the proposition that a clearly expressed limitation provision for uninsured motorist coverage will be enforced. But in that case the limitations clause specifically provided: "Further, any suit, action or arbitration will be barred unless commenced within two years *after the date of the accident.*" (Emphasis added.) (161 Ill. App. 3d at 655.) The limitations clause in the instant case does not contain the clear language of the policy in *Shelton.*

Silverman relies on *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 557 N.E.2d 1281. In that case, as here, the phrase "occurrence of the loss" appeared in the limitations clause. The court held the limitations period had not begun to run because the liability and the sufficiency of policy coverage of the personal injury defendants had not yet been determined. In *Butler,* unlike the policy in this case, there was no definition of "loss" anywhere in the policy. The holding in *Butler* has been followed consistently. *Cowens v. Illinois Insurance Guaranty Fund* (1993), 249 Ill. App. 3d 214, 618 N.E.2d 873; *Glenn v. Prestige Casualty Co.* (1993), 246 Ill. App. 3d 909, 617 N.E.2d 84; *McCray v. Merit Insurance Co.* (1992), 233 Ill. App. 3d 36, 598 N.E.2d 366.

The rules of contract construction apply to insurance policies. Courts interpret these policies as a matter of law. (*Heneghan v. State Security Insurance Co.* (1990), 195 Ill. App. 3d 447, 453, 552 N.E.2d 406.) This question of law can be decided on review independently of the trial court's judgment. *Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 557 N.E.2d 1281.

To interpret the provisions of this insurance contract, we are required to examine the entire document, considering the language of the policy as well as the subject matter and purpose of the contract. *Jeczala v. Lincoln National Life Insurance Co.* (1986), 146 Ill. App. 3d 1043, 1047, 497 N.E.2d 514.

We reject Economy's argument that "loss" has the same meaning everywhere it appears in the policy, boldface type or not. The policy carefully and sensibly limits the applicability of the defined **"loss."** For example, the word appears in boldface type throughout parts VII and VIII of the policy.

Part VII refers to physical damage insurance, where there is no reason to wait for information about the tortfeasor's liability or coverage.

Part VIII concerns the insured's duties of notice and cooperation after an **"accident or loss."** Requiring the insured to act promptly after the accident is a reasonable condition for coverage.

We believe Economy's decision to place a non-boldface type "loss" in the limitations clause was "purposefully inserted and that the language was not employed idly." *State Farm Mutual Automobile Insurance Co. v. Schmitt* (1981), 94 Ill. App. 3d 1062, 1065, 419 N.E.2d 601.

It was not a typographical oversight. There is no good reason to start running the time for lawsuit or arbitration until the tort liability of the underinsured motorist has been established by judgment or settlement. Until then, the insured would not know the extent of his claim against his own insurance company.

If Economy wanted the word "loss" to mean "accident" in the limitations clause, it could have used the word "accident," as it did in other parts of the policy. (See *Cowens v. Illinois Insurance Guaranty Fund* (1993), 249 Ill. App. 3d 214, 219, 618 N.E.2d 873.) Use of the word "accident" in a limitations clause is common in the insurance industry. See *Hermanson v. Country Mutual Insurance Co.* (1994), 267 Ill. App. 3d 1031, 642 N.E.2d 857.

The accident in this case took place July 27, 1984. That would mean, under Economy's current view, that either the written demand for arbitration or this lawsuit would have to have been filed by July 27, 1986. The tort case against Casale was not settled until January 31, 1991. Nothing much would have happened for $4^1/2$ years. We do not believe that is what the parties had in mind when they entered into this insurance contract.

## CONCLUSION

The words at issue in this case are not ambiguous. Our reading of the entire policy compels the conclusion that the clock on the non-boldface "loss" contained in the limitations clause did not start running until the case against Casale was resolved. For that reason, we

reverse the trial judge's grant of summary judgment to Economy and remand for further proceedings.

Reversed and remanded for further proceedings.

CAMPBELL, P.J., and BRADEN, J., concur.