**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 509/QF037603, Appellants,**

v.

**LM ERICSSON TELEFON, AB and Ericsson, Inc., Appellees.**

No. 05–07–01467–CV.

Court of Appeals of Texas, Dallas.

Nov. 24, 2008.

---

Andrew Whitaker, A. Erin Dwyer, Figari & Davenport, L.L.P., Parker D. Young, Dallas, for Appellants.

Ernest Martin, Jr., Haynes and Boone, L.L.P., Dallas, for Appellees.

Before Justices WRIGHT, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

This is an insurance coverage case. The question presented is whether a parent company is insured under a liability insurance policy listing one of its subsidiaries as the named insured. We conclude that it is not. Accordingly, we reverse the trial court's order granting summary judgment for the parent company and render judgment in favor of appellants.

### I. BACKGROUND

#### A. Facts

LM Ericsson Telefon, AB ("LME") is a Swedish company that is a global provider of telecommunications systems. The record contains some evidence that LME's full name in Swedish is Telefonaktiebolaget LM Ericsson, which means "LM Ericsson Telephone Company" in English. Ericsson Inc. is a subsidiary of LME that is incorporated under the laws of Delaware and has its principal place of business in Plano, Texas.

From March 31, 2000 to April 1, 2003, Ericsson Inc. and others were insured by a $20 million technology liability insurance policy issued by American International Specialty Lines Insurance Company ("AISLIC"). In early 2003, Ericsson Inc. (through its insurance broker, Marsh USA, Inc.) submitted an application to AISLIC seeking a new policy. The application included a one-page document entitled "Ericsson North America, 2003 Errors and Omission, Listing of Named Insureds." This page contained a numbered list of fifty-four names including "Ericsson Inc.," which was listed first, and "LM Ericsson," which was listed nineteenth. AISLIC issued a new liability policy that listed Ericsson Inc. as the named insured and had a policy period of April 1, 2003 to April 1, 2004. The policy limit was $15 million. This AISLIC policy is at issue in this litigation.

Appellants, Certain Underwriters at Lloyd's, London Subscribing to Policy Number 509/QF037603 ("Underwriters"), issued a $10 million excess professional indemnity insurance policy to Ericsson Inc. that was effective for the same period as the 2003–2004 AISLIC policy. The excess policy, which is also at issue in this litigation, provides that it is generally "subject to the same terms, exclusions, conditions and definitions as the Policy of Primary Insurance." There is no dispute that the second AISLIC policy is the policy of primary insurance to which Underwriters' policy is excess.

In November 2003, LME was sued in an arbitration proceeding by Atmel Corporation. Atmel accused LME of breaching a license agreement, fraudulently inducing Atmel into executing an amendment to the license agreement, and misappropriating Atmel's trade secrets. In November 2005, the arbitration panel found in favor of Atmel and ordered LME to pay Atmel over $43 million in damages.

## B. Procedural history

This lawsuit began in March 2006 when Underwriters sued LME, Ericsson Inc., and AISLIC for a declaratory judgment that it owed no duty to indemnify any party against the Atmel arbitration award. In their answer, LME and Ericsson Inc. counterclaimed against Underwriters and cross-claimed against AISLIC seeking, among other things, indemnification from both insurance carriers. Eventually the trial court realigned the parties and made LME and Ericsson Inc. plaintiffs and Underwriters and AISLIC defendants.

LME and Ericsson Inc. filed a motion for summary judgment, and Underwriters filed a cross-motion. Underwriters sought summary judgment as to all matters relating to them, praying for a declaration that LME was not an insured under its policy and that LME and Ericsson Inc. should take nothing against Underwriters. LME and Ericsson Inc. sought only a partial summary judgment declaring that LME was an insured under the excess policy. The trial court granted LME and Ericsson Inc.'s motion and denied Underwriters' motion. Shortly thereafter, the trial court signed an agreed order for interlocutory appeal making its partial summary judgment order appealable to this Court under section 51.014(d) of the civil practice and remedies code. Underwriters timely perfected this appeal.[1]

## II. STANDARD OF REVIEW

■■■■ We review the trial court's summary judgment de novo. *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.,* 244 S.W.3d 885, 887 (Tex.App.-Dallas 2008, pet. filed). When both parties move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law. If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. We review the summary judgment evidence presented by both parties and determine all questions presented. We may affirm the trial court's summary judgment, reverse and render judgment for the other party if appropriate, or reverse and remand if neither party has met its summary judgment burden. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied).

■■■■ When a plaintiff moves for summary judgment on its own cause of action, it must establish every element of its claim as a matter of law. *Nelson v. Regions Mortgage, Inc.,* 170 S.W.3d 858, 864 (Tex. App.-Dallas 2005, no pet.). When a defendant seeks a traditional summary judgment on a plaintiff's cause of action, it must either conclusively negate an element of the plaintiff's claim or conclusively establish every element of an affirmative defense. *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.,* 184 S.W.3d 760, 776 (Tex. App.-Dallas 2005, pet. denied). Evidence favorable to the nonmovant must be taken as true, and every reasonable inference from the evidence must be drawn in favor of the nonmovant. *Hackberry Creek Country Club, Inc.,* 205 S.W.3d at 50.

## III. ANALYSIS

The parties agree that LME is not insured under the Underwriters' excess policy if LME is not insured under the AISLIC primary policy. In their first and second issues, Underwriters argue that the trial court should have rendered judgment for them instead of LME be-

1. The trial court signed a separate summary judgment order in favor of LME and against AISLIC. That order is the subject of a separate appeal.

cause the AISLIC primary policy is unambiguous and does not cover LME as an insured. We agree.

## A. Applicable law

 The relevant legal principles are well settled. An insurance policy is a contract. *Nat'l Union Fire Ins. Co. v. Crocker,* 246 S.W.3d 603, 606 (Tex.2008). Our primary goal is to give effect to the written expression of the parties' intent. *Balandran v. Safeco Ins. Co. of Am.,* 972 S.W.2d 738, 741 (Tex.1998). We read the policy as a whole, endeavoring to give meaning, if possible, to every sentence, clause, and word to avoid rendering any portion inoperative. *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.,* 264 S.W.3d 160, 166–67 (Tex. App.-Dallas 2008, no pet.). When terms are defined in an insurance policy, those definitions are controlling. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 219 (Tex.2003). If policy terms are not defined, we give them their ordinary and generally accepted meaning. *Harrison v. Great Am. Assur. Co.,* 227 S.W.3d 890, 893 (Tex.App.-Dallas 2007, no pet.).

## B. Pertinent policy language

The issue we must resolve is the meaning of the term **"you"** in the basic coverage section of the policy. We begin with the language of the policy itself.

The declarations page of the AISLIC policy recites, "Terms appearing in **bold** type have special meanings. See the Definitions for more information." Item 1 on the declarations page recites that the "named insured" is "Ericsson, Inc.," with an address in Plano, Texas. The next relevant provision appears in a part of the policy entitled "BASE." The first words of this part of the policy are: "In consideration of the payment of the premium, and in reliance upon the application and the statements therein, which form a part of

this policy, **we** agree as follows:". This introduction is followed by several numbered sections. Section 2, entitled "**INSURING AGREEMENTS,**" contains the following provision:

**COVERAGE A: LIABILITY FOR DAMAGES**

**We** shall pay amounts, in excess of the applicable Retention and Coinsurance, **you** or any **additional insureds** are legally obligated to pay as **damages** arising from a **claim**

(i) made against **you** or such **additional insured** . . . for wrongful acts.

Section 3, entitled "**DEFINITIONS,**" containing the following provisions, which we present out of order for ease of reference:

(rr) "**You**" or "**your**" mean each and every (1) **organization** and (2) **employee** of an **organization.**

(y) "**Organization**" means (1) the **named insured;** and (2) each **subsidiary.**

(x) "**Named insured**" means the entity listed as such in Item 1 of the Declarations.

(ii) "**Subsidiary**" means . . . any for-profit entity of which the **named insured** has **management control** ("**controlled entity**") on or before the inception of the **policy period** either directly or indirectly through one or more **controlled entities**[.]

Section 12 contains additional language pertaining to the application: "All the statements and representations in the **application** are deemed to be material to the risk assumed by the **insurer,** form the basis of this policy and are incorporated into and have become a part of this policy."

The record also contains the application that preceded the issuance of the AISLIC policy. The cover page of the application lists "ERICSSON INC." as the "Named

Applicant." The following language appears under the basic information about Ericsson Inc.:

> If applying for coverage for multiple entities, please attach a list of such entities, describe their relationships to each other and indicate their places of formation. Where not apparent from entity name, please indicate entity type. ☒ List Attached ☐ Not Applicable.

The instructions on the cover page include the following language:

> The words "you" "your" and "Applicant(s)" refer to the Named Applicant and all the other entities applying for coverage.

The application includes a one-page document entitled "Ericsson North America, 2003 Errors and Omission, Listing of Named Insureds." This page lists fifty-four names. "Ericsson Inc." is listed as number one, and "LM Ericsson" is listed as number nineteen.

## C. Application of the law to the facts

### 1. *The interpretation of "**you**" and "you"*

■■■ The question presented is the proper interpretation of the word "**you**" as used in the Coverage A provision of the AISLIC policy. Underwriters argue that "**you**" unambiguously has only the meaning assigned to that term in section 3 of the "Base" part of the policy-Ericsson Inc., its subsidiaries, and the employees of any of those companies. LME argues that "**you**" can also reasonably be read to have the meaning assigned to "you" in the application because (1) the application is expressly made a part of the policy and (2) "**you**" and "you" are the same word.

We agree with Underwriters that any reasonable reader would think that the term "**you**" used in Coverage A has only the meaning given in section 3(rr) of the policy. The first page of the policy, the declarations page, states that "[t]erms appearing in **bold** type have special meanings" and refers the reader to "the Definitions for more information." In section 3, "**Definitions**," section 3(rr) defines the term "**You**." Throughout the policy, boldface words are visibly and distinctly different from the words not in boldface. We conclude that a hypothetical reasonable reader of this policy would conclude that AISLIC's promise to indemnify "**you**" in Coverage A is extended only to persons and entities within the definition of "**You**" found in section 3(rr). We note that boldface and italicized type are conventional signals for the use of contractually defined terms. *See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 256 (2d ed.1995) (describing conventions under entry for "Definitions"); *see also Schroeder v. Auto–Owners Ins. Co.*, No. L–03–1349, 2004–Ohio–5667, 2004 WL 2384350, at *3 (Ohio Ct.App. Oct. 22, 2004).

Of course, the policy must be read as a whole, so the policy provision that the application and the statements therein "form a part of this policy" means that we must consider the application as well. The instructions on first page of the application include the directive that "[t]he words 'you' 'your' and 'Applicant(s)' refer to the Named Applicant and all the other entities applying for coverage." A reasonable reader would conclude that this definition applies throughout the remainder of the application, such as in the request on the next page that reads, "Describe your business activities and any anticipated changes to same[.]" But we do not think any reasonable reader would construe "**you**" to have the meaning assigned to "you." They are the same words, but they are, in effect, different terms. There appear to be few authorities on point, but they have reached this same result. *Silverman v. Economy Fire & Cas. Co.*, 272 Ill.App.3d 490, 208

Ill.Dec. 909, 650 N.E.2d 603, 604 (1995) (treating **"loss"** and "loss" as different terms); *State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384, 388 (Colo.1997) (en banc) (treating *"pedestrian "* and "pedestrian" as different terms); *accord City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 878 P.2d 750, 754 (1994) ("[W]hen a term appears in bold face type in the liability coverage, it has the meaning ascribed to it the definition section.").

LME argues that Underwriters' interpretation is unreasonable because it renders meaningless both the definition of the word "you" found in the application and the provisions incorporating the application into the policy. We disagree. Underwriters' interpretation gives effect to both definitions of the word "you": when it appears in boldface, it has the meaning assigned to it in section 3(rr), and when it appears in normal typeface, it has the meaning assigned to it in the application. Underwriters' interpretation does not deny the incorporation of the application into the policy, but it acknowledges that the policy and the application define and use two different terms. LME's interpretation, on the other hand, effectively disregards the clause on the declarations page of the policy providing that "[t]erms appearing in **bold** type have special meanings" and directing the reader specifically to the definitions section of the policy for more information.

2. *Other coverage arguments*

▰ LME attempts to sidestep the **"you**/you" controversy in some alternative arguments. First, it argues that AISLIC accepted LME as an insured simply by issuing a policy that expressly incorporated the application because "LM Ericsson" appears on the "Listing of Named Insureds" in the application. LME supports this contention with authorities supporting the proposition that conflicts between an insurance policy and an application must be resolved in favor of the insured. *See, e.g., Robbins v. Reliance Ins. Co.,* 102 S.W.3d 739, 748 (Tex.App.-Corpus Christi 2001, no pet.); *Ind. & O. Live Stock Ins. Co. v. Keiningham,* 161 S.W. 384, 386 (Tex.Civ.App.-Dallas 1913, writ ref'd). We do not perceive any conflict between the policy and the application on the question of who is insured. The only place AISLIC promises to indemnify anyone is in the policy, and that promise extends only to **"you"**—essentially Ericsson Inc., its subsidiaries, and all of their employees. Nowhere in the policy or the application does AISLIC promise to indemnify the "you" identified in the application—the fifty-four entities listed in the attachment. Thus, we perceive no conflicting coverage provisions at all. The application is simply a request (or fifty-four requests) for certain types of insurance coverage, plus the applicants' answers to AISLIC's questions about their business activities for risk evaluation purposes. Incorporation of a request for coverage into the policy does not amount to acceptance of that request by AISLIC, nor does it transmute the request into a promise of coverage by AISLIC.

▰ Next, LME argues that, by issuing the policy, AISLIC automatically insured all of the applicants unless it explicitly denied coverage to them. LME does not explain what kind of conduct or policy language would be sufficient to constitute an "explicit denial" of coverage or how the AISLIC policy falls short. And its argument for a special "explicit denial" rule to govern this particular issue cuts against the grain of recent Texas Supreme Court authority emphasizing the importance of giving effect to the policy's plain language in coverage cases. *See, e.g., Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,* 51 Tex. Sup.Ct. J. 1367, 1369–73 (Tex. Aug. 29, 2008); *Lamar Homes, Inc. v. Mid–*

*Continent Cas. Co.,* 242 S.W.3d 1, 13 (Tex. 2007). It also cuts against the principle that a contracting party is charged with knowledge of the contract's words, their meaning, and their legal effect. *Sparks v. Booth,* 232 S.W.3d 853, 867 (Tex.App.-Dallas 2007, no pet.); *see also In re McKinney,* 167 S.W.3d 833, 835 (Tex.2005) (per curiam) ("Absent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms."). We decline to recognize any special "explicit denial" rule applicable to these circumstances. Applying the usual plain-language approach to policy interpretation, the policy unambiguously gives coverage to entities encompassed within the definition of "**you**" and no one else.

 Finally, LME argues that the AISLIC policy constituted a renewal of previous liability insurance enjoyed by LME and that a renewal insurance policy automatically provides the same coverage as its predecessor unless the insurer gives the insured notice that the coverage has been changed in the renewal. *See, e.g., Woodlawn Fraternal Lodge No. 525, F. & A.M. v. Commercial Union Ins. Co.,* 510 So.2d 162, 164 (Ala.1987); 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 6.9, at 6–139 n. 3 (5th ed.2007) (collecting cases in support of this rule). LME argues that it was insured by a policy issued by St. Paul Fire and Marine Insurance Company until April 2000 and that the AISLIC policy at issue in this case was a renewal of that policy. But we agree with Underwriters that the renewal rule, even if a part of Texas jurisprudence, does not apply when the new policy is issued by a different insurer. The justification for the rule is that "when an insured already owns a policy issued *by a particular insurer,* the insured can, absent notice from the insurer to the contrary, justifiably assume that a renewal of the same policy *by that insurer* provides the same coverage." 1 WINDT, *supra,* § 6.9, at 6–140 (emphases added). The justification for the rule does not exist when an insured switches insurance carriers, so the rule does not apply. *Cessante ratione legis, cessat et ipsa lex.*

We conclude that LME is insured under the AISLIC policy, and therefore under the Underwriters' excess policy, only if it meets the definition of "**you**" found in section 3(rr) of the Base part the AISLIC policy.

### D. Conclusion

LME did not prove (or even contend) in its motion for partial summary judgment that it came within the definition of "**you**" as necessary to qualify as an insured under the AISLIC policy and, thus, under the Underwriters excess policy. Accordingly, the trial court erred by granting LME's motion for partial summary judgment against Underwriters. In their cross-motion for summary judgment, Underwriters proved that LME is actually a parent company to Ericsson Inc., which establishes that LME does not come within the definition of "**you**." Accordingly, the trial court erred by failing to grant Underwriters' motion for summary judgment.

### IV. DISPOSITION

"Sometimes it's not the words that matter, it's how dark they are." *Silverman,* 208 Ill.Dec. 909, 650 N.E.2d at 603. Because only entities coming within the definition of "**you**" were insured under the excess policy involved in this case, and because Underwriters proved that LME was not such an entity, the trial court should have granted Underwriters' motion for summary judgment and denied LME's. We reverse the trial court's order, render judgment that LME is not insured under Underwriters' excess policy, and remand

to the trial court for further proceedings consistent with this opinion.