# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00323-CV

**Summit Hotel Properties, Inc., Appellant**

v.

**American Guarantee and Liability Insurance Company, Continental Casualty Company, ACE American Insurance Company, Ategrity Specialty Insurance Company, Starr Surplus Lines Insurance Company, Landmark American Insurance Company, Lexington Insurance Company, Interstate Fire & Casualty Company, Certain Underwriters at Lloyd's (Consortium #9226), Independent Specialty Insurance Company, Certain Underwriters At Lloyd's, London Subscribing to Policy No. GEP3734, Arch Specialty Insurance Company, Everest Indemnity Insurance Company, HDI Global Insurance Company, Neon Underwriting Bermuda Limited, QBE Specialty Insurance Company, General Security Indemnity Company of Arizona, Starstone Specialty Insurance Company, and Princeton Excess & Surplus Lines Insurance Company, Appellees**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1 -GN-20-005902, THE HONORABLE LAURIE EISERLOH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case involves an insurance-coverage dispute between appellant Summit Hotel Properties, Inc., and appellees, two groups of insurance companies (the "Market Insurers" and the "Excess Insurers," referred to collectively as the Insurers).[1] The district court granted

---

[1] The Market Insurers are American Guarantee and Liability Insurance Company, Continental Casualty Company, ACE American Insurance Company, Ategrity Specialty Insurance Company, Starr Surplus Lines Insurance Company, Landmark American Insurance Company, Lexington Insurance Company, Interstate Fire & Casualty Company, Certain Underwriters at Lloyd's (Consortium #9226), Independent Specialty Insurance Company, Certain Underwriters At Lloyd's, London Subscribing to Policy No. GEP3734, Arch Specialty Insurance Company, Everest Indemnity Insurance Company, HDI Global Insurance Company, Neon Underwriting Bermuda Limited, QBE Specialty Insurance Company, General Security

summary judgment in favor of the Insurers, denying coverage of certain losses claimed by Summit. In two issues on appeal, Summit asserts that the exclusions used by the Insurers to deny coverage to Summit do not apply in this case. We will affirm the judgment.

## BACKGROUND

Summit, which owns hotels in Texas and elsewhere, alleges that it incurred physical loss and damage resulting from the SARS-CoV-2 virus and the resulting COVID-19 disease pandemic. More specifically, Summit alleges that beginning in March 2020, it was "forced to close or significantly restrict many of its operations because of [the] coronavirus, COVID-19, and various related civil authority orders." Summit filed a claim with its Insurers "for all property and business income losses incurred due to the Covid-19 pandemic." Summit's insurance policy is an "all risks" policy, which "insures against all risk of direct physical loss or damage occurring during the Policy Term to property . . . except as hereinafter excluded." The Insurers denied coverage, and Summit filed suit in the court below, alleging claims for breach of contract, violations of the Texas Insurance Code, and declaratory relief.

The parties filed competing motions for summary judgment. Pursuant to a Rule 11 Agreement, the parties agreed to address only the applicability of two exclusions contained within the policy, the Contamination Exclusion and the Biological Hazards Exclusion. More

---

Indemnity Company of Arizona, Starstone Specialty Insurance Company, and Princeton Excess & Surplus Lines Insurance Company.

The Excess Insurers, who also are included in the group of Market Insurers listed above, are QBE Specialty Insurance Company, General Security Indemnity Company of Arizona, Starstone Specialty Insurance Company, and Princeton Excess & Surplus Lines Insurance Company.

2

specifically, the Rule 11 Agreement provided that the Market Insurers' motion for summary judgment and Summit's partial motion for summary judgment would address the applicability of the Contamination Exclusion, while the Excess Insurers' motion also would address the Biological Hazards Exclusion. The parties reserved their rights to later address, if necessary, "any other issues regarding the applicability of coverage grants, other exclusions, limitations or burdens of proof under the policies or the law." Thus, as the parties acknowledge in their briefing, whether Summit suffered direct physical loss or damage to its property was not at issue in the court below.

Following a hearing, the district court granted summary judgment in favor of the Insurers based on the Contamination Exclusion, denied Summit's competing motion for summary judgment on the Contamination Exclusion, and granted summary judgment to the Excess Insurers based on the Biological Hazards Exclusion. This appeal by Summit followed.

**STANDARD OF REVIEW AND GOVERNING LAW**

We review a trial court's ruling on summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

"Texas courts are to construe insurance policies 'using ordinary rules of contract interpretation.'" *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam) (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). "When doing so, courts must 'determin[e] the parties' intent as reflected in the terms of the policy itself.'" *Id*. at 257–58 (quoting *Tanner*, 289 S.W.3d at 831). "Courts must 'examine the

3

entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless.'" *Id.* at 258 (quoting *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010)). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)). "Unless the policy dictates otherwise, [courts] give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126). However, courts "cannot interpret a contract to ignore clearly defined terms." *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam). "When terms are defined in an insurance policy, those definitions control the interpretation of the policy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003).

"If we determine that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted. *Id.* (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)). "Alternatively, if we determine that both interpretations are reasonable, then the policy is ambiguous," *Nassar*, 508 S.W.3d at 258, and "we must resolve the uncertainty by adopting the construction that most favors the insured," *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). "In contract law, the term 'ambiguous' means more than simply 'denoting a lack of clarity in language.'" *Nassar*, 508 S.W.3d at 258 (quoting *RSUI Indem. Co.*, 466 S.W.3d at 119). "A contract is not ambiguous simply because the parties to a lawsuit offer conflicting interpretations of the contract's

4

provisions." *Id.* "A policy is ambiguous if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation." *Id.*

## DISCUSSION

In its first issue, Summit asserts that the Contamination Exclusion does not apply to viruses such as the virus that causes COVID-19. The policy provides:

**6. Excluded Cause of Loss**

This policy does not insure against loss or damage caused by the following cause of loss:

. . . .

O.     Contamination, shrinkage or change in color, flavor, texture or finish.

The policy goes on to define "contamination" as follows:

**38. Definitions**

The following terms whenever used in this policy shall mean:

. . . .

E.     **Contamination**

Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew.

5

Summit does not dispute that SARS-CoV-2 is a virus that causes the COVID-19 disease and that all of Summit's alleged damages were caused by SARS-CoV-2, COVID-19, and the various orders issued by civil authorities to reduce the spread of the virus.[2] Instead, it argues that the Contamination Exclusion does not unambiguously apply to viruses.

In arguing that the policy is ambiguous, Summit asserts that the term "Contamination," as it appears in the exclusion, has a different meaning from the term "**Contamination**" that appears in the policy's definition section because the latter use of the term appears in bold type. As support for this contention, Summit relies on cases concluding that policy terms that appear in bold type have a different meaning from terms that appear in non-bold type. *See Certain Underwriters at Lloyd's, London Subscribing to Policy No. 509/QF037603 v. LM Ericsson Telefon, AB*, 272 S.W.3d 691, 696 (Tex. App.—Dallas 2008, pet. denied) (treating "**you**" and "you" as different terms); *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 388 (Colo. 1997) (en banc) (treating "***pedestrian***" and "pedestrian" as different terms); *Silverman v. Economy Fire & Cas. Co.*, 650 N.E.2d 603, 604 (Ill. App. Ct. 1995) (treating "**loss**" and "loss" as different terms).

However, the policies in the cases cited by Summit had specific provisions that assigned different meanings to words that appeared in bold type. *See Certain Underwriters*, 272 S.W.3d at 696 ("The first page of the policy, the declarations page, states that '[t]erms appearing in bold type have special meanings' and refers the reader to 'the Definitions for more

---

[2] *See* U.S. Centers for Disease Control and Prevention, About COVID-19, available at: https://www.cdc.gov/covid/about/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19.html (last visited May 2, 2025); *see also* Tex. R. Evid. 201(b)(2) (court may take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

6

information.'"); *State Farm*, 940 P.2d at 388 (policy was separated into five distinct coverage categories and various terms had different meanings in each category, including "pedestrian," which appeared in two distinct coverage categories, one for no-fault coverage (where it was defined and appeared in bold italics) and another for uninsured motorist coverage (where it was undefined and "not in bold italic typeface"); court concluded that contrast "indicates that the parties only intended the technical definition of 'pedestrian' to apply" to no-fault coverage); *Silverman*, 650 N.E.2d at 604 (policy provided that certain words and phrases "have special meaning throughout this policy and appear in boldface type when used").

The policy in this case contains no such provision indicating that a term in bold type means something different from a term in non-bold type. Instead, the policy plainly provides that contamination "whenever used in this policy shall mean" "[a]ny condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen, or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew." By using the phrases "whenever used" and "shall mean," the policy mandates that "whenever" it uses the term "contamination," that term "shall mean" what the policy says it means. For us to conclude that "contamination" means something else when it appears in the exclusions section of the policy because the type is not bold, we would have to disregard this mandatory language, which we cannot do. *See, e.g.*, *Sundown Energy LP*, 622 S.W.3d at 888 (contract provided that definition of term would apply "whenever" that term was used in contract; court concluded that this meant "no exceptions"); *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 131 (Tex. 2018) ("By its plain and common meaning, 'shall' denotes mandatory action."); *see also Knott*, 128 S.W.3d at

7

219 ("When terms are defined in an insurance policy, those definitions control the interpretation of the policy.").

After examining the entirety of the policy, we conclude that the Contamination Exclusion, when construed in light of the entire contract, has a definite legal meaning and is thus unambiguous. *See FPL Energy, LLC v. TXU Portfolio Management Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014). Summit does not advance a reasonable alternative interpretation of the Contamination Exclusion. Summit argues that "contamination" as used in the exclusions section of the policy "must have a different meaning" from "contamination" as used in the definition section of the policy, but we find nothing in the policy that would support giving that term a different meaning. The policy contains only one definition of "contamination," expressly provides that this definition "shall" apply "whenever" the term "contamination" is "used in this policy," and makes no distinction between terms that appear in bold type and those that do not. We "cannot interpret a contract to ignore clearly defined terms." *Sundown Energy LP*, 622 S.W.3d at 888. Because the policy in this case clearly defines the term "contamination" to include viruses, and that definition applies throughout the policy, we conclude that by its plain language, the Contamination Exclusion unambiguously applies to the alleged damages in this case. *See RSUI Indem. Co.*, 466 S.W.3d at 136 ("Fortunately, we need not attempt to imagine what the parties intended, and instead need only construe 'the parties' intent as expressed by the words they chose to effectuate their agreement.'" (quoting *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015)); *see also FPL Energy*, 426 S.W.3d at 63 ("An ambiguous contract . . . has a doubtful or uncertain meaning or is reasonably susceptible to multiple interpretations; we will not find ambiguity simply because the parties disagree over a contract's meaning.").

Outside of the policy language at issue here, Summit also draws this Court's attention to two endorsements, one provided by Endurance American Specialty Insurance Co. ("Sompo"), an insurer that added a "Communicable or Infectious Disease Exclusion" to its policy, and the other drafted by the Insurance Services Office, an industry organization that helps insurance companies draft policy language. As an initial matter, because Sompo's exclusion and the ISO exclusion are not contained within the policy at issue here, they are considered extrinsic or parole evidence, which we cannot use to construe an unambiguous policy. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) ("An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports."); *National Union Fire Insurance of Pittsburgh v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam) ("Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument."); *Certain Underwriters at Lloyd's of London v. Cardtronics, Inc.*, 438 S.W.3d 770, 782 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("If the policy is unambiguous, parol evidence is inadmissible to vary the terms of the contract.").

Additionally, even if we could consider the parol-evidence exclusions, the absence of those exclusions from the policy here is not dispositive. The Sompo exclusion provides:

> This policy does not apply to any loss, demand, claim, occurrence, direct physical loss or damage, expense or suit arising out of or related in any way to communicable or infectious disease, condition or sickness, including but not limited to:

1. Any causative agent of any such condition, disease, or sickness regardless of whether such agent gives rise to any such condition, disease, or sickness; or

2. Any actual or attempted testing for, containing, detoxifying, mitigating, monitoring or neutralizing of, responding to, or assessing the effects of any communicable or infectious disease, condition or sickness or causative agent.

All other terms and conditions of this policy shall remain unchanged.

Because of this exclusion, which Summit acknowledges "unambiguously applies to Summit's claim," Summit nonsuited Sompo. According to Summit, this separate exclusion demonstrates that the Contamination Exclusion does not apply here.

Similarly, the ISO language provides, "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." That exclusion is also not present here. Summit asserts that "[t]he choice not to add such an exclusion evidences an intent not to exclude viruses as a cause of loss or damage."

An insurance policy must be construed by the words the parties chose to include in the policy, not by the words they omitted. *See RSUI Indem. Co.*, 466 S.W.3d at 136 ("Fortunately, we need not attempt to imagine what the parties intended, and instead need only construe 'the parties' intent as expressed by the words they chose to effectuate their agreement.'" (quoting *In re Deepwater Horizon*, 470 S.W.3d at 464)). Here, the parties chose to exclude loss or damage resulting from "contamination" and chose to include a broad definition of "contamination" that applied to "[a]ny condition of property due to the actual presence of any . . . virus," which unambiguously applies to the damages alleged by Summit. Thus, we agree with

10

the Insurers that "the absence or presence of an exclusion used in other policies cannot be used to vary the meaning of this Policy."

We overrule Summit's first issue, and because the Contamination Exclusion is applicable to all the Insurers, we need not consider the Biological Hazards Exclusion discussed in Summit's second issue that is applicable to only the Excess Insurers. *See* Tex. R. App. P. 47.1.

## CONCLUSION

We affirm the district court's order granting summary judgment.

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed: May 22, 2025

11