

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-24-00346-CV

JLV ASSET MANAGEMENT, INC. F/K/A CHEEVES BROS. STEAK HOUSE, INC.,
APPELLANT

V.

THE CHICKEN PLACE, INC., APPELLEE

On Appeal from the 146th District Court
Bell County, Texas[1]
Trial Court No. 300,267, Honorable Jack Weldon Jones, Presiding

March 12, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

How do you measure a year?  The writer of *Rent* famously proposed 525,600 minutes.[2]  In this case, the answer depends not on the number of daylights, or sunsets, or even cups of coffee, but on how the parties use the surrounding terms.

---

[1] This cause was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

[2] Jonathan Larson, *Rent: The Complete Book and Lyrics of the Broadway Musical* 88 (Applause Theatre & Cinema Books 2008) (song "Seasons of Love").

Appellant, JLV Asset Management, Inc. f/k/a Cheeves Bros. Steak House, Inc., sold a restaurant to Appellee, The Chicken Place, Inc. Their promissory note, effective January 2, 2017, offered a $250,000 discount if paid "within one year of the Effective Date." The Chicken Place paid on January 2, 2018. JLV refused the discount, insisting payment was one day late. Trial was held before a jury, who found in favor of The Chicken Place.

JLV appeals from the judgment awarding The Chicken Place damages for the discount and for unreimbursed gift cards. In four issues, JLV argues the trial court erred by submitting contract construction issues to the jury, that no evidence supports the jury's finding, that a mistrial should have been granted based on juror misconduct, and that the evidence was insufficient to support the jury's award for gift card reimbursement. The Chicken Place raises one issue challenging the denial of certain attorney's fees but filed no notice of cross-appeal. We affirm on all issues.

## Facts

JLV sold its restaurant to The Chicken Place under a Purchase of Business Agreement. As part of the transaction, JLV agreed to owner-finance a portion of the sale. The financing required The Chicken Place to sign a promissory note, effective January 2, 2017, for the principal amount of $1.25 million. That note contained a discount provision: "Lender agrees to discount the note $250,000.00 if the Borrower pays off the note in full within one year of the Effective Date of note or $125,000.00 if the Borrower pays off the note in full within the second year of the Effective Date of note."

The purchase agreement addressed gift cards. The Chicken Place agreed to honor gift cards sold under JLV's ownership. In return, JLV agreed to reimburse The Chicken Place for all gift cards honored during the two years following closing. The Chicken Place was required to submit gift cards and sales receipts on a quarterly basis; JLV was required to reimburse those amounts within thirty days of receipt.

On January 2, 2018, The Chicken Place paid the note in full and claimed the $250,000 discount. JLV disagreed, allowing only a discount of ten percent of the remaining balance.[3] In JLV's view, "within one year" of January 2, 2017 meant payment by January 1, 2018; thus, the January 2 payment was a day late.

The gift card reimbursements found their own dispute. The Chicken Place submitted gift card receipts for eight quarters. JLV paid the first quarter's reimbursement. After some dispute over the second quarter's documentation, JLV sent an email following the fourth quarter thanking The Chicken Place for its submission method and agreeing to the amounts and criteria used for quarters three and four. The Chicken Place continued submitting reimbursement requests the same way. JLV never paid another reimbursement after the first and second quarter. It never told The Chicken Place why.

The Chicken Place sued. Both parties submit the promissory note and Purchase Agreement are unambiguous, but they disagree about what "within a year" meant. They also disagree about whether The Chicken Place properly documented its gift card submissions. The trial court denied all parties' summary judgment motions and submitted

---

[3] There is no dispute the discount applied is inconsistent with the note.

3

those questions to the jury. The jury found for The Chicken Place, awarding damages for both the unpaid discount and the gift card reimbursements.

After the verdict but before judgment, JLV moved for mistrial based on juror misconduct. During voir dire, potential jurors had been asked whether any of them knew Blake Van Dusen, son of JLV's shareholder and the restaurant's manager at the time of sale. No one responded. Blake testified at trial. Afterward, he told JLV's attorney that he recognized juror Michael Egbert.

At the hearing on JLV's motion, Blake testified he was an acquaintance of Egbert. He knew Egbert's mother-in-law because he had purchased property from her. At least a year before trial, Egbert's wife had accused Blake of trespassing on that property. A few months before trial, Egbert's mother-in-law invited Blake and his children to Egbert's son's birthday party, where Blake and Egbert had a brief conversation about preschool.

Juror Egbert also took the stand. He testified he knew that someone named Blake had bought property from his mother-in-law, but he left his wife's family's property matters to his wife. He recalled speaking with Blake at the birthday party but never knew Blake's last name was Van Dusen. And he testified he did not recognize Blake as the same person when Blake testified at trial.

The court denied the mistrial motion and rendered judgment for The Chicken Place. JLV appealed.

4

**ANALYSIS**

## A. Contract Interpretation and Sufficiency of the Evidence

In its first two issues, JLV argues the trial court erred by submitting contract construction to the jury and that no evidence supports the jury's finding. These issues are related, so we address them together.

### 1. Standard of Review

A review for legal sufficiency considers the evidence in the light most favorable to the challenged finding and indulges every reasonable inference supporting it. *City of Keller*, 168 S.W.3d at 822, 827. A finding is supported if more than a scintilla of evidence exists. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). For factual sufficiency, we set aside a finding only if the credible evidence supporting it is so weak, or so contrary to the overwhelming weight of all evidence, that a new trial should be ordered. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016).

Whether a contract is ambiguous and how to interpret unambiguous provisions are questions of law we review de novo. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). A contract is not ambiguous merely because the parties disagree about its meaning. *Id*. Because the construction of an unambiguous contract is a question of law, a trial court errs in submitting that question to the jury. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010). That error is harmless, however, if the jury answers the question as the court should have. *Id.*; Tex. R. App. P. 44.1(a)(1).

Contract interpretation is a holistic exercise. *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 906 (Tex. 2016); *Hysaw v. Dawkins*, 483 S.W.3d 1, 8

(Tex. 2016). We examine the entire writing, harmonizing its provisions so that none becomes meaningless. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). No single provision controls. *Id.* We also approach the task practically, keeping in mind the purpose the contract was designed to serve. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996).

Both parties maintained that the contract unambiguously supported their respective positions. We agree the contract is unambiguous and that the trial court should have construed it as a matter of law. But because the jury reached the legally correct result, the error caused no harm.

2. What the Terms Mean

For the first two issues, the dispute is not over the meaning of the word "year" in the abstract. It is over the meaning of the phrase "within one year of the Effective Date." The parties, of course, could have defined their discount deadline in any number of ways. They could have given a time certain by which the note's payment would be entitled to a discount (e.g., "no later than 5:00 p.m. on January 1, 2018"). They could have stated the means of calculating a due date (e.g., "no later than 365 days after the Effective Date").

Elsewhere in the note, the parties did just that. They employed definitions when a restricted meaning of the word "year" mattered to them. In Section 6, governing interest calculation, the note provides that "the per diem interest rate or amount will be calculated as if each year has only 360 days." Elsewhere, when calculating the maximum rate of interest, the note specifies that "the per diem interest rate or amount will be calculated and based on the actual number of days in the year (365 or 366 as the case may be)."

6

Thus, within the same document, the parties employed both the 360-day "banker's year" and an actual-day counting method when the context demanded it.

Yet, for the phrase at issue here, the parties simply wrote "within one year of the Effective Date." There is no calculation methodology, no reference to counting days. When sophisticated parties define a term one way for certain purposes and leave it undefined elsewhere, we presume they intended the undefined usage to carry a different meaning. *See Certain Underwriters at Lloyd's, London v. LM Ericsson Telefon*, AB, 272 S.W.3d 691, 696 (Tex. App.—Dallas 2008, pet. denied) ("You" and "you" "are the same words, but they are, in effect, different terms."). Because the parties did not define the discount provision's terms, they elected for the words to carry a general, ordinary meaning. *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017); RESTATEMENT (SECOND) OF CONTRACTS § 202.

The Supreme Court of Texas recently reaffirmed that when parties contractually measure time in "years," they invoke the calendar-anniversary method by default. In *Apache Corp. v. Apollo Expl., LLC*, 670 S.W.3d 319 (Tex. 2023), the parties disputed whether an oil-and-gas lease with a primary term of "three years from" January 1, 2007 expired on December 31, 2009, or January 1, 2010. The Court held it was the latter, the anniversary date. *Id*. at 327. The Court traced this default rule to 1851, observing that "we have treated oil-and-gas leases that measure their primary terms (or other time periods) in terms of years 'from' a certain date as expiring on their anniversary date." *Id*. at 329. Critically, the Court emphasized that parties who wish to depart from this rule may do so, but they must say so clearly. *Id*. at 322, 328.

7

JLV attempts to distinguish *Apache* because the contract there used the preposition "from" to measure time; here the parties said "within one year of the Effective Date."[4]  That is a distinction without a difference.  Both constructions look to the same endpoint: the calendar's return to the measuring date.  The word "within" does not convert "year" into "365 days"; it merely signals that the event must occur before the period expires.  *See* RODNEY HUDDLESTON & GEOFFREY K. PULLUM, THE CAMBRIDGE GRAMMAR OF THE ENGLISH LANGUAGE 695, 1560 (Cambridge Univ. Press 2002).  Terms like "year," "month," and "week" are "culturally determined time-units"; they are interpreted by reference to recurring calendar points, not by counting days.  *Id.* at 695.

Common parlance proves the reliability of this rule.  One who attends a "weekly" meeting on a Thursday can simply look to the next Thursday on the calendar to determine the next meeting; there is no need to calculate 168 hours.  A couple married on June 1, 2000, will say in 2025: "We have been married twenty-five years today."  Math would prove the couple has actually been married 9,131 days, but we ignore the extra days accumulated from leap years.  The anniversary statement is true not because it matches a precise temporal calculation, but because it aligns with a reference point on the calendar.

The parties here could have written "within 365 days."  Indeed, they demonstrated in this very note that they knew how to do so when precise counting mattered.  They

---

[4] JLV also invokes statute of frauds cases interpreting "within one year."  But the statute of frauds measures the duration of continuous performance; the discount provision establishes a deadline for a discrete act.

chose not to for the discount provision. We hold that the phrase, "Within one year of the Effective Date" means before the end of January 2, 2018.

### 3. Application

Applying these principles, sufficient evidence shows The Chicken Place paid the note in full on January 2, 2018, within one year of the Effective Date. The jury therefore had a sufficient basis to find The Chicken Place was entitled to the $250,000 discount. Although the trial court erred by submitting the interpretation question to the jury, the error was harmless.

We overrule JLV's first and second issues.

### Gift cards

We address Appellant's fourth issue next because it also involves contract construction. JLV argues the evidence is legally and factually insufficient to support the jury's finding that it failed to comply with the gift card reimbursement provisions. We disagree.

Jonathan Van Dusen, JLV's President, drafted the Purchase Agreement. He testified that "sales receipt" meant a receipt signed by the customer, though he acknowledged he did not use those words in the contract. Whatever JLV intended the contract to mean but failed to include within the four corners of the document is irrelevant to our review. *Primo*, 512 S.W.3d at 893; *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006) ("[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.").

9

Under the Purchase Agreement, JLV was to reimburse The Chicken Place within thirty days of submission of "sales receipts" and "gift cards." Neither term is defined. A "receipt" is commonly understood as a writing acknowledging the receiving of goods or money. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1038 (11th ed. 2014). A "sales receipt," then, is simply a writing acknowledging a sale. There is no contractual requirement that receipts be signed.

JLV also argues that presentment of actual gift cards were required for reimbursement. The evidence shows gift cards were presented when fully redeemed. It was undisputed that a gift card not fully redeemed could not be surrendered. Jonathan Van Dusen testified that he only expected The Chicken Place to give back cards without balances. Receipts provided to JLV showed the balance remaining on the gift cards that were not fully redeemed along with the amount of the gift card used on the transaction. After the fourth quarter submission, JLV sent an email thanking The Chicken Place for its submission method and agreeing to the amounts and criteria used. The Chicken Place continued submitting reimbursement requests the same way. JLV never paid another reimbursement after the first and second quarters and never told The Chicken Place why. Even if The Chicken Place was required to provide physical gift cards for every reimbursable transaction, a party who accepts performance under a contract without objection waives strict compliance with contractual formalities. *See Seismic & Digital Concepts, Inc. v. Digital Res. Corp.*, 590 S.W.2d 718, 721 (Tex. App.—Houston [1st Dist.] 1979, no writ).

Appellant's fourth issue is overruled.

Juror misconduct

In its third issue, JLV argues the trial court should have granted a new trial based on juror misconduct.  We disagree.

A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion.  *Primrose Operating Co. v. Jones*, 102 S.W.3d 188, 193 (Tex. App.—Amarillo 2003, pet. denied).  To warrant a new trial for jury misconduct, the movant must establish that the misconduct occurred, that it was material, and that it probably caused injury.  *Golden Eagle Archery v. Jackson,* 24 S.W.3d 362, 372 (Tex. 2000).  Whether misconduct occurred and caused injury is a question of fact.  *In re Whataburger Restaurants LP*, 429 S.W.3d at 598–99.  Injury is not probable when the evidence shows the jury would likely have rendered the same verdict without the misconduct.  *Id.*  The trial court, as factfinder, was entitled to credit witness testimony.  *See Golden Eagle Archery*, 24 S.W.3d at 372 (trial court has wide latitude in determining whether misconduct occurred).

At the hearing on JLV's motion, Blake testified he was an acquaintance of Egbert. He knew Egbert's mother-in-law, Egbert's wife had accused Blake of trespassing on property, and he had a brief conversation with Egbert at a birthday party.  Egbert testified he knew that someone named Blake had bought property from his mother-in-law, he recalled speaking with Blake at the birthday party but did not know his last name, and he did not recognize Blake when Blake testified at trial.

The evidence is conflicting as to whether Egbert knew Blake, the only evidence of misconduct.  Because the trial court as the factfinder determines the weight and credibility

11

of conflicting testimony, we cannot say the court abused its discretion in denying the mistrial.

We overrule JLV's fourth issue.

<u>Appellee's Attorney's Fees</u>

In its brief, The Chicken Place attempts to raise one issue, arguing the trial court erred by denying a portion of its requested attorney's fees.  It did not, however, file a notice of cross-appeal.  Under Texas Rules of Appellate Procedure 25.1(c), absent just cause, we may not grant more favorable relief to a party who does not file a notice of appeal.  The Chicken Place did not show just cause for failing to file notice of appeal and thus presents nothing for correction.  *See New York Party Shuttle, LLC v. Bilello*, 141 S.W.3d 206, 219 (Tex App.—Houston [1st Dist.] 2013, pet. denied).  We may not address this issue.

## CONCLUSION

Having overruled all four of Appellant's issues and found that Appellee failed to present its issue, we affirm the trial court's judgment.

Lawrence M. Doss<br>
Justice

12